STATE OF WISCONSIN : CIRCUIT COURT : MANITOWOC COUNTY
                      BRANCH 3

--------------------------------------------------

STATE OF WISCONSIN,

                  PLAINTIFF,        DECISION

vs.                                 Case No. 06 CF 88

BRENDAN R. DASSEY,

                  DEFENDANT.

--------------------------------------------------

**DATE:**    MAY 12, 2006

**BEFORE:**  Hon. Jerome L. Fox
             Circuit Court Judge

**APPEARANCES:**

        KENNETH R. KRATZ
        Special Prosecutor
        On behalf of the State of Wisconsin.

        LEONARD D. KACHINSKY
        Attorney at Law
        On behalf of the Defendant.

        BRENDAN R. DASSEY
        Defendant
        Appeared in person.


                * * * * * * * *

        **TRANSCRIPT OF PROCEEDINGS**

        Reported by Jennifer K. Hau, RPR

            Official Court Reporter


                       1

COPY

1          THE COURT:  Morning, counsel, morning

2     ladies and gentlemen.  This is 06 CF 88.  State of

3     Wisconsin vs. Brendan R. Dassey.  Appearances,

4     please.

5          ATTORNEY KRATZ:  The State of Wisconsin

6     appears by Ken Kratz, Calumet County D.A.,

7     appearing as special prosecutor.

8          ATTORNEY KRATZ:  The defendant appears

9     personally and with Attorney Len Kachinsky.

10          THE COURT:  All right.  Um, we are here

11     today for a decision on a motion to suppress.  Uh,

12     the defendant, Brendan Dassey, has brought this

13     motion requesting that the Court suppress statements

14     he made to Investigator Mark Wiegert with the

15     Calumet County Sheriff's Department and Agent Thomas

16     Fassbender of the Wisconsin Department of Justice.

17          The motion brought contends that the

18     statements made by Brendan Dassey were obtained

19     from him involuntarily and should, under the

20     applicable law, be suppressed.  The motion was

21     heard in this courtroom last Thursday, May 4.

22          Court heard testimony from Investigator

23     Wiegert.  It heard testimony from the defendant's

24     mother, Barb Janda, and Kris

25     Schoenenberger-Gross, a school psychologist for

2

1    the Mishicot School District.  The Court also

 2    received, five exhibits during the course of the

 3    hearing.

 4          In addition, the Court has read the

 5    relevant case law cited by the parties in their

 6    briefs as well as a number of other pertinent

 7    cases.

 8          The Court has also reviewed the DVDs of

 9    the interviews, read the transcripts and listened

10    to the audiotapes.  The audiotape in the form of

11    a CD.  Now, these electronic recordings are all

12    part of Exhibit 5.  Based on those exhibits, that

13    testimony, the briefs, and arguments of Counsel,

14    the Court makes the following findings of fact:

15          Number one.  The defendant, Brendan

16    Dassey, was born October 19, 1989, and was, at

17    the time of the police interviews in February and

18    March of 2006, 16 years of age.

19          Number two.  At the time of the police

20    interviews, he was a student at Mishicot High

21    School enrolled in mostly regular classes, but

22    also in some special education classes.  Testing,

23    it disclosed, an IQ level in the low average to

24    borderline range.  There is no evidence that he

25    suffered from any emotional disorder which made

                            3

```
1     him unusually susceptible or vulnerable to police
2     pressures.
3              Three.  Prior to his interviews which
4     are the subject of this motion, his only known
5     police contacts were on November 6 and
6     November 10, 2005, when he was questioned in
7     Marinette County about Teresa Halbach.
8              Number four.  The parties have
9     stipulated to the noncustodial nature of the
10    police interviews with Brendan Dassey on
11    February 27, 2006, and March 1, 2006.
12             Hearing Exhibit No. 1 is a *Miranda*
13    warning and waiver signed and initialed by
14    Brendan Dassey on February, uh, 27, 2006, at
15    3:21 p.m.  And Exhibit 2 is a *Miranda* warning and
16    waiver signed and initialed by Brendan Dassey on
17    March 1, 2006, at 10:10 a.m.
18             Number five.  Investigator Wiegert and
19    Agent Fassbender met with Brendan Dassey on
20    February 27, 2006, at Mishicot High School at
21    approximately 12:30 p.m.  He was told by them
22    that he didn't have to answer any questions and
23    he was free to go whenever he wanted.  Exhibit 5,
24    transcript page 440.
25             He was questioned for approximately an
```

4

1   hour and was again told he could stop answering
2   questions and could, quote, walk out anytime, end
3   quote.  Exhibit five, transcript page 467.
4           At the close of that interview, he gave
5   the investigators a written statement.  The
6   investigators both complimented him for giving
7   them a voluntary statement telling him they knew
8   how difficult it was to tell -- tell them the
9   details he divulged.  The interview ended at
10  2:14 p.m.  He returned to his eighth hour class
11  at Mishicot High School.
12          Number six.  At approximately 3:00 p.m.
13  on February 27, 2006, the same day of the earlier
14  interview, Brendan Dassey and his mother, Barb
15  Janda, met with the investigators at Mishicot
16  High School and agreed that Brendan Dassey could
17  do a videotape interview with the Two Rivers
18  Police Department.
19          Ms. Janda was asked if she wanted to be
20  present during the interview.  She said it was
21  not necessary.  And Brendan Dassey said he did
22  not care if his mother was present or not.
23          After he signed and initialed Exhibit 1,
24  the **Miranda** warnings and waiver, the
25  investigators interview Brendan Dassey about

5

1  certain events which he claimed occurred on the
2  night of October 31, 2005.
3          The interview lasted approximately 41
4  minutes and was conducted entirely in a
5  conversational tone of voice by the interviewers.
6  At no time during the interview did Brendan
7  Dassey appear visibly stressed or pressured by
8  the questions or conducts -- conduct of the
9  interviewers.
10          Number seven.  On March 1, 2006,
11 Investigators Wiegert and Agent Fassbender sought
12 and received permission from Brendan Dassey's
13 mother, Barb Janda, to speak with Brendan.  She
14 was to pick him up at the conclusion of the
15 interview.  Following her grant of permission,
16 Investigators Wiegert and Fassbender picked up
17 Brendan Dassey at Mishicot High School at
18 approximately 10:05 a.m. and transported him to
19 the Manitowoc County Sheriff's office, stopping
20 on the way at Brendan Dassey's residence so he
21 could retrieve a pair of blue jeans that the
22 investigators wanted for evidentiary purposes.
23          Number eight.  The conversation in the
24 car on the way to the sheriff's office was
25 electronically recorded except for the time spent

6

1    in Brendan Dassey's residence.  The three arrived

2    at the sheriff's office at approximately 10:43

3    a.m. and went to a carpeted interview room

4    equipped with videotaping equipment.

5            Shortly after arriving in the interview

6    room and while the videotape equipment had been

7    activated, Brendan Dassey was asked by

8    Investigator Wiegert whether he remembered his

9    *Miranda* rights that had been read to him and

10   whether he still wanted to talk to the

11   investigators.

12           He responded in the affirmative to both

13   questions by saying, quote, yeah, unquote, and

14   nodding his head.

15           Uh, number nine.  The interview between

16   Brendan Dassey and the two investigators lasted

17   approximately three hours during the course of

18   which Brendan Dassey made a number of inculpatory

19   admissions.  At no time during the interview was

20   Brendan Dassey handcuffed or otherwise physically

21   restrained.

22           On several occasions during the course

23   of the interview the investigators offered soda,

24   water, or food to Brendan Dassey and asked him if

25   he wanted to use the bathroom.  Throughout the

7

```
1    interview, Brendan Dassey was seated on an
2    upholstered loveseat.
3           Number 10.  At various times during the
4    interview the investigators encouraged Brendan
5    Dassey to provide details to them by appealing to
6    his sense of honesty.  Quote, honesty here is the
7    thing that's going to help you, end quote.
8    Exhibit 5, transcript page 541.
9           Quote, honesty is the only thing that
10   will set you free, uh, end quote.  Exhibit 5, uh,
11   transcript 5 -- page 541.
12          Quote, come on Brendan, be honest.  I
13   told you before that's the only thing that's
14   going to help ya here, end quote.  Exhibit 5,
15   transcript page 547.
16          Quote, we just need you to be honest
17   with us.  Exhibit 5, transcript page 584.
18          These are but a few example of
19   admonitions to be honest made to Brendan Dassey
20   by the investigators.  The entire interview,
21   including the admonitions, was done by both
22   investigators in a normal speaking tone with no
23   raised voices, no hectoring, or threats of any
24   kind.
25          Nothing on the videotape visually
```

8

depicts Brendan Dassey as being agitated, upset, frightened, or intimidated by the questions of either investigator. His demeanor was steady throughout the actual questioning.

He displayed no difficulty in understanding the questions asked of him. At no time did he ask to stop the interview or request that his mother or a lawyer be present. Instead, he answered the questions put to him.

Sometimes he revised his answers after being prodded to be truthful or being told by his questioners that they knew his answer was either incomplete or untrue and he should be honest.

These appeals to honesty made by the interviewers were nothing more than a reminder to Brendan Dassey that he had a moral duty to tell the truth.

Number 11. On occasion, the interviewers purported to know details which, in fact, were not true or which represented uncorroborated theories of the crime in which they presented to Brendan Dassey as factually accurate in order to draw information from him. In the context of this interview, the Court finds that this tactic of misleading Brendan Dassey by

9

```
 1      the interviewers occasionally pretending to know

 2      more than they did was neither improper nor

 3      coercive because it did not interfere with

 4      Brendan Dassey's power to make rational choices.

 5              Number 12.  No frank promises of

 6      leniency were made by the interviews to --

 7      interviewers to Brendan Dassey.  He was told,

 8      quote, we can't make any promises, but we'll

 9      stand behind you no matter what you did, end

10      quote.  Exhibit 5, transcript page 541.

11              Quote, I want to assure you that Mark

12      and I are both in your corner.  We're on your

13      side, end quote.  Exhibit 5, uh, transcript page

14      540.

15              Quote, we don't get honesty here.  I'm

16      your friend right now, but I gotta -- I gotta

17      believe in you, and if I don't believe in you, I

18      can't go to bat for you, end quote.  Exhibit 5,

19      page 547.

20              Quote, we're in your corner, end quote.

21      Exhibit 5, page 547.

22              These and similar statements made by the

23      interviewers were an attempt to achieve a rapport

24      with Brendan Dassey and convince him that a

25      truthful account of events would be in his best
```

```
 1    interest.

 2              Based on those findings of fact, based

 3    on the record, the exhibits in this matter, the

 4    Court concludes, as a matter of law, the

 5    following:

 6              Under a totality of the circumstances

 7    test, which I'm using here, given Brendan

 8    Dassey's relevant personal characteristics as set

 9    forth in the previous findings and on the record

10    in this case, the State has met its burden by

11    showing by a preponderance of the evidence that

12    the statements made by Brendan Dassey to

13    Investigators Wiegert and Fassbender, and which

14    are the subject of this motion, were the product

15    of Brendan Dassey's free and unconstrained will

16    reflecting deliberateness of choice.  In short,

17    they were voluntary statements.

18              Accordingly, the defendant's motion to

19    suppress these statements is denied.  And, I

20    might add as a -- as a footnote or, perhaps, more

21    than a footnote here, the parties stipulated to

22    the fact that this was not -- either of these

23    interviews, the 27th of February, March 1 of

24    2006, were noncustodial interviews.

25              Uh, the Court, after reviewing the
```

```
 1    record, has determined that even had they been
 2    custodial interviews, that the appropriate
 3    *Miranda* warnings were given, were understood by
 4    this defendant, and, thus, had they been
 5    custodial -- had they been custodial interviews,
 6    uh, the result, uh, that the statements were
 7    voluntary would remain unchanged.
 8             Now, uh, Exhibit 5, which I've alluded
 9    to in the preface of -- of the findings, as well
10    as during the course of the findings, is, as I
11    noted at the last hearing, uh, an in camera, that
12    means in chambers, uh, exhibit.  The Court is
13    going to seal that exhibit, uh, and it will
14    remain sealed until the trial.
15             The Court believes, given the continuing
16    media scrutiny in this matter, that the
17    dissemination of Exhibit 5, uh, would have,
18    conceivably, a tendency to taint a jury pool.
19    It's my understanding -- And, gentlemen, correct
20    me if I'm wrong.  First you, Mr. Kratz, you have
21    no objection to proceeding in that fashion?
22             ATTORNEY KRATZ:  That's correct, Judge.
23             THE COURT:  Mr. Kachinsky?
24             ATTORNEY KACHINSKY:  I don't object either,
25    Your Honor.
```

12

```
 1              THE COURT:  All right.  Anything else on

 2    this before we move on to -- And I'm going to ask

 3    you, Mr. Kratz, to draft the order.

 4              ATTORNEY KRATZ:  I will -- I will do that,

 5    Judge.  Uh, Your Honor, I -- I know that the Court

 6    was reading from a -- a -- a prepared statement.  Is

 7    it possible that I can get a copy of that to, uh,

 8    amend or attach that to the order, or would the

 9    Court just prefer I indicate in the order, for

10    reasons stated on the record.

11              THE COURT:  Um, why don't you put, for

12    reasons stated on the record.  Or, I suppose, in the

13    alternative, you can ask the already overworked

14    court reporter to -- to type a transcript here.

15              ATTORNEY KRATZ:  I won't do that, Judge.

16    I'll just, uh, draft a generic order.  That's

17    fine.  Thank you.

18              THE COURT:  All right.  Um, the next item,

19    I believe, Mr. Kachinsky, is yours.  It's -- it's a

20    motion.  Do you want to be heard on your motion to,

21    uh, revise the terms of -- of the bail?

22              ATTORNEY KACHINSKY:  Um, yes, Your Honor.

23              ATTORNEY KRATZ:  Judge, before we get into

24    the -- to the merits of that, I --I wonder if I

25    could be heard just -- just briefly on, uh -- on
```

13

1    that, uh -- on that procedure.  Um, because the,

 2    um -- one of the factors on any motion to modify

 3    bond, uh, directs the Court to consider the, uh,

 4    strength of the State's case.  Because of, uh, this

 5    morning's rulings, uh, it is the State's position

 6    that the strength of the State's case has become,

 7    uh, significantly, uh, solidified.

 8          Uh, let me also tell the Court that, um,

 9    and Mr., uh, Kachinsky, uh, is to be, uh, made

10    aware of this, that additional, uh, forensic

11    conclusions were received.  Additional reports

12    were received two days ago in our office which,

13    again, need to be revealed to this Court under

14    seal.

15          Lastly, Judge, the Manitowoc County, uh,

16    Corporation Counsel in a similar request made by

17    Mr. Avery, uh, made their position known, and I

18    don't know in this case if they've been invited

19    to do so.

20          With all of those factors, Judge, and

21    with the, uh, bond modification on the State's

22    part being at least an option, uh, I'm wondering

23    whether the Court would grant the State, uh, an

24    opportunity, perhaps five to seven days, to, uh,

25    file those matters with the Court to include, in

                          14

```
 1    camera, uh, the additional information that, uh,

 2    we have received, uh, and if the Court would be

 3    willing, uh, to allow a, uh, more inclusive bail

 4    modification hearing again in the next five to

 5    seven days.

 6              That seems to, uh, address those matters

 7    that I cannot relay to the Court in open court

 8    today, uh, and would provide this Court an

 9    opportunity to reflect upon, or at least

10    consider, the relative, uh, strength of the

11    State's case in the bail modification motion.

12              THE COURT:  When were the -- the -- When

13    was the forensic evidence of -- of which you make

14    mention received?

15              ATTORNEY KRATZ:  The 10th.  Two days

16    ago, Judge.

17              THE COURT:  All right.  Mr. Kachinsky?

18              ATTORNEY KACHINSKY:  Well, Your Honor, this

19    motion was filed, I believe, on the 24th or 25th

20    of -- of April, 2006.  Uh, State's aware, from

21    having prosecuted the Avery case as well, at least

22    as to, uh, the values of the property that's --

23    that's involved, uh, and, uh, other factors relating

24    to bond other than the recent forensics evidence,

25    uh, as to whether or not the motion would be granted
```

15

```
1    or not.  Um, I don't know if the State's forensic

2    evidence would add that much more to what the

3    Court's already ruled today in terms of the

4    admissibility of Mr. Dassey's statements.

5              So, it would be our -- our preference

6    that the Court, uh, proceed with the motion

7    and -- and make a ruling today.

8              THE COURT:  Well, let me ask you,

9    Mr. Kratz, is it your intention to, in effect,

10   request that -- that, uh, bail be revoked here and

11   no bail be allowed at all?

12             ATTORNEY KRATZ:  No, Judge.  But I am going

13   to be asking that bail be increased, uh, having the

14   Court now consider the relative strength of the

15   State's case.  That's in -- that's information I

16   didn't have until three minutes ago.

17             THE COURT:  All right.  Uh, the -- the

18   Court -- the Court is inclined, uh -- Since the

19   State says it -- it -- it has received some

20   additional information that -- that have -- may have

21   a bearing on the, uh, uh -- on the outcome of the

22   motion, the Court is inclined to -- to, uh -- to

23   adjourn this particular motion today, Mr. Kachinsky,

24   and -- and set, uh, uh -- set a near date for -- for

25   hearing on it.
```

16

```
 1                    Uh, I don't have my calendar with me.
 2                    ATTORNEY KRATZ:  I can file my motion by
 3        Wednesday, if that's okay, Judge.
 4                    THE COURT:  Okay.
 5                    ATTORNEY KRATZ:  If the Court can give me
 6        five days to do that, I -- I can certainly have that
 7        to the Court and Mr. Kachinsky.
 8                    THE COURT:  So that would be, uh, Wednesday
 9        the 17th.  Um, all right.  Could, um -- Well, I
10        think what we'll -- we'll -- we'll do, uh,
11        following -- uh, following business in this court
12        today is -- is, uh, discuss a motion date in
13        chambers.  I have to, uh -- I have to take a look at
14        the calendar and you, gentlemen, probably do have to
15        look at yours as well, and there's some other
16        matters we should be discussing.
17                    So, I am going to, uh, grant the -- the
18        State's motion to adjourn, order that, uh --
19        order that the revised motion or information be
20        filed by Wednesday, May 17.  Um, any other
21        matters to come before the Court today?
22                    ATTORNEY KACHINSKY:  Your Honor, perhaps,
23        just to avoid unnecessarily calling, a -- a witness,
24        I don't know if the State disputes at all the value
25        of the property that's involved, I could submit to
```

17

```
 1    the Court, uh, extra copy of the appraisals that
 2    were made and, I believe, perhaps, submitted in the
 3    Avery case.
 4            If that's not the issue, if the issue is
 5    this additional evidence regarding the State's
 6    case, if that -- at least that portion of the,
 7    uh, motion was taken care of, uh, that would,
 8    perhaps, facilitate some of the inconvenience
 9    that this delay is going to cause us.
10            ATTORNEY KRATZ:  How about if we do this,
11    Judge, I'm willing to share with Mr. Kachinsky my,
12    uh -- my feelings on that after going through the
13    documents and at least alert him whether or not
14    we'll need a witness at that next hearing.
15            THE COURT:  Well, I -- I noticed in his
16    motion -- in Mr. Kachinsky's motion -- he said that
17    he had sent you some documentary, uh, proof as to
18    values that he was claiming in motion.
19            ATTORNEY KRATZ:  He -- he brought some with
20    him today as well.
21            THE COURT:  Yeah.  Well, is there any
22    reason we can't just have those marked and be part
23    of the record?
24            ATTORNEY KRATZ:  No.  That's fine.
25            THE COURT:  Yeah.  Let's do that.  And the
```

18

```
 1    bailiff was kind enough to bring a calendar here so
 2    let's take a look.  How about Friday?  The
 3    afternoon?  Friday, May 26?
 4              ATTORNEY KRATZ:  State's available, Judge.
 5              ATTORNEY KACHINSKY:  The only thing -- Uh,
 6    I've got something in Chilton, but, perhaps, that
 7    can be, uh, taken care of, Your Honor.
 8              ATTORNEY KRATZ:  I'll see what I can do,
 9    Judge, to --
10              THE COURT:  How about 1:15?
11              ATTORNEY KACHINSKY:  Sure.
12              THE COURT:  Anything else, gentlemen?
13              ATTORNEY KRATZ:  Judge, I have to, uh,
14    place on the record, and receive the Court's
15    acquiescence, as the information that I intend to
16    provide certainly has not been publicly disclosed
17    and would, uh, I believe, be the kind of information
18    that the Court, uh, likely would not want disclosed.
19    May I file my motion to amend under seal as well?
20              THE COURT:  All right.  It -- it will be
21    received as -- as an in camera motion, or at least
22    the exhibits to the motion, and -- and anything in
23    the motion that, uh, would be revelatory will be
24    received as an -- an -- as an in camera motion.
25              ATTORNEY KRATZ:  That's fine, Judge.
```

19

APP 000510

```
 1                THE COURT:  Anything further?

 2                ATTORNEY KRATZ:  No.

 3                ATTORNEY KACHINSKY:  And, Your Honor, the,

 4       uh, appraisal's been marked.  I don't know if we're

 5       going to -- I didn't see what letter you --

 6                THE CLERK:  One.

 7                ATTORNEY KACHINSKY:  As Exhibit 1.

 8                THE COURT:  Okay.  The appraisal will be,

 9       uh, Exhibit 1 and it will be part of the -- the

10       motion, uh, and, uh, Mr. Kratz, do you have any

11       objection to the appraisal?

12                ATTORNEY KRATZ:  No.

13                THE COURT:  I mean, you're not --

14                ATTORNEY KRATZ:  Not to -- not to its

15       receipt for this hearing, Judge.

16                THE COURT:  All right.  All right.

17       Anything else?

18                ATTORNEY KRATZ:  No.  Thank you, Judge.

19                ATTORNEY KACHINSKY:  No.

20                THE COURT:  Could I see you both in about

21       ten minutes in chambers, please?

22                ATTORNEY KRATZ:  Yes, Judge.

23                THE COURT:  Thanks.  We're adjourned.

24                (PROCEEDINGS CONCLUDED.)

25
```

20

APP 000511

```
 1    STATE OF WISCONSIN   )
                           )SS.
 2    COUNTY OF MANITOWOC  )

 3

 4                 I, Jennifer K. Hau, Official Court

 5         Reporter for Circuit Court Branch 3 and the State

 6         of Wisconsin, do hereby certify that I reported

 7         the foregoing matter and that the foregoing

 8         transcript has been carefully prepared by me with

 9         my computerized stenographic notes as taken by me

10         in machine shorthand, and by computer-assisted

11         transcription thereafter transcribed, and that it

12         is a true and correct transcript of the

13         proceedings had in said matter to the best of my

14         knowledge and ability.

15                 Dated this 29th day of August, 2006.

16

17

18

19                      Jennifer K. Hau, RPR
                        Official Court Reporter
20

21

22

23

24

25


                              21
```

APP-000512