COURT OF APPEALS
DECISION
DATED AND FILED

January 30, 2013

Diane M. Fremgen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2010AP3105-CR

Cir. Ct. No. 2006CF88

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

BRENDAN R. DASSEY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County: JEROME L. FOX, Judge. *Affirmed*.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶1 PER CURIAM. Brendan Dassey appeals from a judgment convicting him of first-degree intentional homicide, second-degree sexual assault, and mutilation of a corpse, all as party to a crime. He also appeals from the order

denying his motion for postconviction relief. Dassey contends that his pre-trial and trial counsel provided ineffective assistance, that his confession was involuntary and that, because the jury did not hear evidence of the unreliability of his confession, the real controversy was not tried. He seeks a new trial and/or a new suppression hearing. We reject his arguments, deny the requested remedies, and affirm the judgment and order.

¶2     Sixteen-year-old Dassey and his uncle, Steven Avery, were charged in the October 2005 sexual assault and murder of Teresa Halbach and with later burning her body. After a nine-day trial, the jury returned guilty verdicts on all three counts. Avery was tried and convicted separately. Postconviction, Dassey moved for a new trial and a new suppression hearing. The trial court denied his motion after a five-day hearing in a thorough, soundly reasoned decision. This appeal followed. Additional facts will be supplied as warranted.

*Voluntariness of Confession*

¶3     On February 27, 2006, law enforcement officers conducted a witness interview of Dassey at his high school and a second videotaped interview at the Two Rivers Police Department. Dassey's mother, Barbara Janda, agreed to the second interview but declined the offer to accompany Dassey. On March 1, again with Janda's permission, officers retrieved Dassey from school for a videotaped interview. During the ride to the Manitowoc County Sheriff's Department, Dassey was read his **Miranda**[1] rights and signed a waiver. Upon arriving, Dassey acknowledged that he remembered the advisories and still wanted to talk to the

---

[1] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

interviewers. Dassey made several inculpatory statements over the course of the three-hour interview, such that he now was viewed as a suspect. He was charged two days later.

¶4  Dassey contends that his March 1 confession was involuntary and should have been suppressed. He claims that law enforcement used psychological interrogation tactics like fact feeding and suggestions of leniency that overbore his will and exceeded his personal ability to resist due to his age, intellectual limitations and high suggestibility.

¶5  In assessing voluntariness, "the essential inquiry is whether the confession was procured via coercive means or whether it was the product of improper pressures exercised by the police." *State v. Clappes*, 136 Wis. 2d 222, 235-36, 401 N.W.2d 759 (1987). A prerequisite for a finding of involuntariness is coercive or improper police conduct. *Id.* at 239. We evaluate a confession's voluntariness on the totality of the circumstances. *Id.* at 236. Our analysis involves a balancing of the defendant's personal characteristics against the police pressures used to induce the statements. *State v. Jerrell C.J.*, 2005 WI 105, ¶20, 283 Wis. 2d 145, 699 N.W.2d 110. "This court will not upset a trial court's determination that a confession was voluntary unless it appears that the finding was clearly erroneous," nor will we substitute our judgment for that of the trial court as to the credibility of disputed factual testimony. *State v. Echols*, 175 Wis. 2d 653, 671, 499 N.W.2d 631 (1993). Whether the facts as found constitute coercion is a question of law that we review independently. *See Clappes*, 136 Wis. 2d at 235.

¶6  The trial court heard the testimony of Dassey's mother, his school psychologist and a police interviewer, and had the benefit of listening to the

audiotapes and viewing the videotaped interviews.  The trial court found that Dassey had a "low average to borderline" IQ but was in mostly regular-track high school classes; was interviewed while seated on an upholstered couch, never was physically restrained and was offered food, beverages and restroom breaks; was properly Mirandized; and did not appear to be agitated or intimidated at any point in the questioning.  The court also found that the investigators used normal speaking tones, with no hectoring, threats or promises of leniency; prodded him to be honest as a reminder of his moral duty to tell the truth; and told him they were "in [his] corner" and would "go to bat" for him to try to achieve a rapport with Dassey and to convince him that being truthful would be in his best interest.  The court concluded that Dassey's confession was voluntary and admissible.

¶7    The court's findings are not clearly erroneous.  Based on those findings, we also conclude that Dassey has not shown coercion.  As long as investigators' statements merely encourage honesty and do not promise leniency, telling a defendant that cooperating would be to his or her benefit is not coercive conduct.  *State v. Berggren*, 2009 WI App 82, ¶31, 320 Wis. 2d 209, 769 N.W.2d 110.  Nor is professing to know facts they actually did not have.  *See State v. Triggs*, 2003 WI App 91, ¶¶15, 17, 264 Wis. 2d 861, 663 N.W.2d 396 (the use of deceptive tactic like exaggerating strength of evidence against suspect does not necessarily make confession involuntary but instead is factor to consider in totality of circumstances).  The truth of the confession remained for the jury to determine.

*Alleged Ineffective Assistance of Pre-Trial Counsel*

¶8    Attorney Len Kachinsky was appointed to represent Dassey shortly after Dassey was charged in March 2006.  Dassey contends that Kachinsky rendered ineffective assistance due to an "actual conflict of interest" that so

breached the fundamental duty of loyalty owed him that, under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and its progeny, prejudice can be presumed. We disagree.

¶9     Conflict of interest claims in criminal cases are analyzed as a form of ineffective assistance of counsel. *State v. Love*, 227 Wis. 2d 60, 68, 594 N.W.2d 806 (1999). To prevail, the defendant must show by clear and convincing evidence that counsel had an "actual conflict of interest"—*i.e.*, that counsel "was required to make a choice advancing his [or her] own interests to the detriment of [the] client's interests." *Id.* at 71-72 & n.5 (citations and one set of quotation marks omitted). Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected [counsel's] performance." *Sullivan*, 446 U.S. at 350. "The possibility of conflict is insufficient to impugn a criminal conviction." *Love*, 227 Wis. 2d at 68 (citing *Sullivan*, 446 U.S. at 350).

¶10    Dassey contends that Kachinsky: conceded that the March 1 interview was noncustodial; made statements to the media about the possibility of a plea deal; directed his investigator, Michael O'Kelly, to gather further evidence on the Avery property; shared information with the State that helped build its case against Avery but which also implicated him because he faced party liability; and, through O'Kelly's duplicity,[2] allowed another Dassey police interview on May 13 which resulted in a telephone confession to his mother. Dassey asserts that he at least is entitled to a new suppression hearing because when he did not prevail at

---

[2] O'Kelly told Dassey that his inconclusive polygraph results showed a ninety-eight percent probability of deception.

the original hearing, his March 1 statement went on to become "the centerpiece" of the State's case.

¶11    Dassey draws no viable link between Kachinsky's actions and any demonstrable detriment to him.  While Dassey contends that at least as of April 23, 2006, Kachinsky and O'Kelly began planning to gather evidence favorable to the State and to extract a confession from him against his will, he identifies no "adverse effect" at the May 4 suppression hearing.  Kachinsky testified at the *Machner*[3] hearing that he hoped to get the best deal he could for Dassey and that, knowing Dassey's family was pressuring him, he mentioned the possibility of a plea to the media to "send a message" to them that Dassey might have to "take a legal option that they don't like."  He also concluded that Dassey was properly Mirandized before the March 1 questioning; the trial court agreed and successor counsel likewise saw no meritorious *Miranda* issue.  The totality of the circumstances also persuades us that Dassey was sufficiently aware of the precustodial *Miranda* advisements after the nature of the interview changed.  *See State v. Grady*, 2009 WI 47, ¶20, 317 Wis. 2d 344, 766 N.W.2d 729.

¶12    The search warrant resulting from information given to the State yielded nothing.  The jury did view a brief video clip of Dassey's post-interview telephone conversation with his mother.  Significantly, though, the State properly introduced it only to rebut Dassey's testimony on direct that the acts to which he had admitted "didn't really happen" and that his confession was "made up."  Voluntary statements obtained even without proper *Miranda* warnings are available to the State for the limited purposes of impeachment and rebuttal.  *See*

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

***State v. Knapp***, 2003 WI 121, ¶114, 265 Wis. 2d 278, 666 N.W.2d 881, *vacated and remanded by* 542 U.S. 952 (2004), *reinstated in material part by* 2005 WI 127, ¶2 n.3, 285 Wis. 2d 86, 700 N.W.2d 899.

¶13   Kachinsky was long gone before Dassey's trial or sentencing.[4] Dassey has not convinced us that Kachinsky's actions amounted to an actual conflict and that Kachinsky's advocacy was adversely affected, such that it was detrimental to Dassey's interests. He is not entitled to a new trial or hearing.

*Alleged Ineffective Assistance of Trial Counsel*

¶14   Dassey next submits that the representation by successor counsel, Attorneys Mark Fremgen and Ray Edelstein, also was ineffective because they failed to present substantial evidence that his March 1 confession was unreliable, failed to retain an expert on coercive interrogation tactics, failed to present a part of his confession suggesting recantation, and, in closing argument, conceded his guilt to the corpse-mutilation charge. Once again, we disagree.

¶15   To prevail, Dassey must show that he was prejudiced by his counsel's deficient performance. *See* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). Counsel is deficient when the identified acts or omissions were "outside the wide range of professionally competent assistance." *See* ***State v. Pitsch***, 124 Wis. 2d 628, 637, 369 N.W.2d 711 (1985). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 642. "A reasonable

---

[4] Kachinsky ceased representing Dassey eight months before Dassey's trial began. He withdrew after his performance was deemed "deficient" for arranging to have Dassey again questioned by the State on May 13, 2006 and then failing to appear.

probability is a probability sufficient to undermine confidence in the outcome." *Id.* We "strongly presume" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 637. We need not address both prongs of the ineffectiveness analysis if the defendant fails to make a sufficient showing on one. *Strickland*, 466 U.S. at 697.

¶16     Dassey complains that his counsel should have engaged in a point-by-point attack on each of the nineteen details in his confession to demonstrate that his knowledge came from external contamination such as fact-feeding by police, exposure to media coverage and conversations with his family, rather than personal knowledge. It is unclear how Dassey thinks counsel should have proceeded. He denied that he watched television coverage, does not establish what facts he actually learned from other sources, repeatedly said he did not know why he gave various answers and even told counsel he might have dreamed the details or gotten them from a book. Under the circumstances, we are satisfied that counsel's performance was reasonable. *See id.* at 688.

¶17     Dassey also asserts that trial counsel should have introduced evidence that his March 1 confession was unreliable, and likely false, by calling an expert on police interrogation methods. The failure was more egregious, he claims, once counsel learned that the State had retained Joseph Buckley, a prominent expert in that area and head of the firm that markets the "Reid" interrogation technique. Although forensic psychologist Dr. Robert Gordon, the expert the defense did retain, testified as to Dassey's "high suggestibility" under "mild pressure," he lacked the credentials to testify about coercive police tactics.

¶18     Besides Dr. Gordon, Fremgen and Edelstein consulted with other experts, including a Reid Institute-trained police officer and Dr. Lawrence White,

a professor of psychology and legal studies. They ultimately decided not to counter Buckley with an expert of their own. Fremgen was reluctant to engage in a "battle of the experts" he was not certain they could win, and Edelstein thought experts would detract from the defense strategy of trying to humanize Dassey. Moreover, the State did not call Buckley, and Fremgen testified that retaining White always was tied to responding to Buckley's testimony. Had the defense put White on the stand, the State could have called Buckley in rebuttal. We cannot say that failing to call a false-testimony expert was "outside the wide range of professionally competent assistance" evidence.[5] *See* **Pitsch**, 124 Wis. 2d at 637; **State v. Van Buren**, 2008 WI App 26, ¶19, 307 Wis. 2d 447, 746 N.W.2d 545.

¶19 Next, Dassey contends counsel ineffectively failed to play the portion of a videotape, taken after his May 13 questioning, that contained this spontaneous exchange with his mother:

> BRENDAN: What'd happen if he [Avery] says something his story's different? Wh—he says he, he admits to doing it?
>
> BARB JANDA: What do you mean?
>
> BRENDAN: Like if his story's like different, like I never did nothin' or somethin'.
>
> BARB JANDA: Did you? Huh?

---

[5] At the postconviction motion hearing, police interrogation expert Dr. Richard Leo testified in person about Dassey's vulnerability to the police interview methods; Dr. White provided similar testimony by affidavit. Noting that the trial court found that both would have qualified as experts at trial and that at least some of their testimony would have been admissible, Dassey contends that it was "manifestly unreasonable" not to call them at trial. In an ineffective assistance claim, the question is not the admissibility of expert testimony but whether the failure to attempt to introduce it was unprofessional error.

> BRENDAN: Not really.
>
> BARB JANDA: What do you mean not really?
>
> BRENDAN: They got to my head.

Dassey asserts that the comments "not really" and "[t]hey got to my head" amount to a recantation.

¶20  The defense team disagreed on the clip's benefit. Fremgen feared it depicted a parent who recognized that her child was involved in a serious matter; Edelstein thought the jury should see it. Fremgen, as lead counsel, prevailed. The trial court found that the exchange at best was ambiguous and at worst validated Dassey's confession. This finding is not clearly erroneous. Further, had the defense played that clip, the State well might have played portions in which Dassey nods "yes" when Janda asks, "Did [Avery] make you do it?" and, when she asks, "What did he do to you to make you do it?" he answers, "Nothin'." We cannot say that Fremgen's decision was unreasonable trial strategy.

¶21  Finally, Dassey contends that, without his consent, Edelstein conceded the mutilation charge during closing argument. Edelstein told the jury that Dassey went to Avery's house expecting a Halloween bonfire and "probably" saw something in the fire "and that something was Teresa Halbach." Dassey argues that Edelstein's concession is the "functional equivalent of a guilty plea."

¶22  We disagree. "A guilty plea waives trial, cross-examination of witnesses, the right to testify and call witnesses in one's own defense, and the right to a unanimous jury verdict of guilt beyond a reasonable doubt." ***State v. Gordon***, 2003 WI 69, ¶24, 262 Wis. 2d 380, 663 N.W.2d 765. Dassey exercised all of these rights. Furthermore, Edelstein in no way conceded that Dassey mutilated, disfigured or dismembered a corpse with intent to conceal a crime. *See* WIS.

STAT. § 940.11 (2009-10).[6] Mere presence at a crime scene does not establish party-to-a-crime liability. *See* **State v. King**, 120 Wis. 2d 285, 293, 354 N.W.2d 742 (Ct. App. 1984). Edelstein testified postconviction that, as the mutilation charge carried the least penalty, he wanted to "provide that option to the jury." The trial court's finding that counsel's concession was a reasonable tactical decision is not clearly erroneous. *See* **Gordon**, 262 Wis. 2d 380, ¶28.

*Discretionary Reversal*

¶23  Lastly, Dassey asks us to reverse his conviction in the interest of justice, asserting that the real controversy—whether his March 1 confession was reliable evidence of his guilt—was not fully tried. *See* WIS. STAT. § 752.35. We decline to use our discretionary power of reversal so that Dassey may take a different approach in a new trial when the defense that was presented was competent, if unsuccessful. *See* **State v. Hubanks**, 173 Wis. 2d 1, 28-29, 496 N.W.2d 96 (Ct. App. 1992).

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise noted.