# STATE OF WISCONSIN

# IN SUPREME COURT

No. 2010AP3105-CR

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

v.

BRENDAN R. DASSEY,

       DEFENDANT-APPELLANT-PETITIONER.

RECEIVED

MAR 2 0 2013

CLERK OF SUPREME COURT
OF WISCONSIN

## RESPONSE IN OPPOSITION
## TO PETITION FOR REVIEW

J.B. VAN HOLLEN
Attorney General

WARREN D. WEINSTEIN
Assistant Attorney General
State Bar #1013263

Attorneys for Plaintiff-Respondent

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9444
(608) 266-9594 (Fax)
weinsteinwd@doj.state.wi.us

STATE OF WISCONSIN

IN SUPREME COURT

No. 2010AP3105-CR

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRENDAN R. DASSEY,

DEFENDANT-APPELLANT-PETITIONER.

RESPONSE IN OPPOSITION
TO PETITION FOR REVIEW

The State of Wisconsin, Plaintiff-Respondent, by Assistant Attorney General Warren D. Weinstein, opposes the petition for review of an unpublished decision of the Court of Appeals, District II, affirming Defendant-Appellant-Petitioner Brendan Dassey's judgment of conviction and an order denying post-conviction relief. The case presents no "special and important reasons" justifying Supreme Court review. Wis. Stat. § (Rule) 809.62.

## ARGUMENT

I.     **THE COURT OF APPEALS USED WELL SETTLED PRINCIPLES DICTATED BY THE UNITED STATES SUPREME COURT AND THIS COURT WHEN IT REJECTED DASSEY'S INVOLUNTARY CONFESSION CLAIM.**

Investigator Wiegert and Special Agent Fassbender interviewed Brendan Dassey three times, twice on February 27, 2006, and again on March 1, 2006 (117:4, 7, 12).

In February and March of 2006, Brendan Dassey, was sixteen years of age (46:3). At the time of the police interviews, he was a student at Mishicot High School enrolled in mostly regular classes, but also in some special education classes. Testing disclosed an IQ level in the low-average to borderline range. There is no evidence that he suffered from any emotional disorder which made him unusually susceptible or vulnerable to police pressures (46:3-4).

INTERVIEW AT MISHICOT HIGH SCHOOL, FEBRUARY 27, 2006.

Investigator Wiegert and Agent Fassbender met with Brendan Dassey on February 27, 2006, at Mishicot High School at approximately 12:30 p.m. (46:4). They told Dassey that he did not have to answer any questions and he was free to go whenever he wanted (46:5). After an hour they again told Dassey he could stop answering

questions and could, "walk out anytime." The interview ended at 2:14 p.m. He returned to his eighth hour class at Mishicot High School (46:5).

## INTERVIEW AT TWO RIVERS POLICE DEPARTMENT, FEBRUARY 27, 2006.

On February 27, 2006, Brendan Dassey and his mother, Barbara Janda, met with the investigators at Mishicot High School at approximately 3:00 p.m. and agreed that Dassey could do a videotape interview at the Two Rivers Police Department. The investigators asked Janda if she wanted to be present during the interview. She said it was not necessary and Dassey said he did not care if his mother was present or not (46:5).

Exhibit No. 1 is a *Miranda*[1] warning and waiver signed and initialed by Dassey on February, 27, 2006, at 3:21 p.m. (46:4). After he signed the warnings and waiver, the investigators interviewed Dassey about certain events which he claimed occurred on the night of October 31, 2005 (46:5-6). The interview lasted approximately forty-one minutes and was conducted entirely in a conversational tone of voice by the interviewers. At no time during the interview did Dassey appear visibly stressed or pressured by the questions or conduct of the interviewers.

## CONFESSION AT MANITOWOC COUNTY SHERIFF'S DEPARTMENT, MARCH 1, 2006.

On March 1, 2006, Investigator Wiegert and Agent Fassbender sought and received permission

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

from Janda to speak with Dassey. She was to pick him up at the conclusion of the interview. Following her grant of permission, Wiegert and Fassbender picked Dassey up at Mishicot High School at approximately 10:05 a.m. (46:6). Exhibit No. 2 is a *Miranda* warning and waiver Dassey signed and initialed on March 1, 2006, at 10:10 a.m. (46:4). The investigators transported him to the Manitowoc County Sheriff's office (46:6). The three arrived at the sheriff's office at approximately 10:43 a.m. and went to a carpeted interview room equipped with videotaping equipment (46:7). Shortly after arriving in the interview room and after the videotape equipment had been activated, Investigator Wiegert asked Dassey whether he remembered his *Miranda* rights and whether he still wanted to talk to the investigators. He responded to both questions by saying, "yeah," and nodding his head (46:7).

The interview lasted approximately three hours during the course of which Dassey made a number of inculpatory admissions. At no time during the interview was Dassey handcuffed or otherwise physically restrained (46:7). On several occasions during the course of the interview the investigators offered soda, water, or food to Dassey and asked him if he wanted to use the bathroom (46:7). During the interview, Dassey was seated on an upholstered loveseat (46:7-8).

At various times during the interview the investigators encouraged Dassey to provide details to them by appealing to his sense of honesty (46:8). Both investigators spoke in a normal speaking tone with no raised voices, no hectoring, or threats of any kind during the entire interview, including the admonitions (46:8).

Nothing on the videotape visually depicted Dassey as being agitated, upset, frightened, or intimidated by the questions of either investigator (46:8-9). His demeanor was steady throughout the actual questioning (46:9). He displayed no difficulty in understanding the questions asked of him (46:9). He answered the questions put to him (46:9). At no time did he ask to stop the interview or request that his mother or a lawyer be present (46:9).

Sometimes he revised his answers after being prodded to be truthful or being told by his questioners that they knew his answer was either incomplete or untrue and he should be honest (46:9).

On occasion, the interviewers purported to know details which, in fact, were not true or which represented uncorroborated theories of the crime which they presented to Dassey as factually accurate in order to draw information from him (46:9).

The interviewers made no promises of leniency to Dassey (46:10). He was told, "we can't make any promises, but we'll stand behind you no matter what you did" (46:10; 79:34:4). "I want to assure you that Mark and I are both in your corner. We're on your side" (46:10; 79:34:3). "[W]e don't get honesty here. I'm your friend right now, but I gotta – I gotta believe in you, and if I don't believe in you, I can't go to bat for you" (46:10; 79:34:10). "We're in your corner" (46:10; 79:34:10).

CONCLUSIONS OF LAW.

The interviewers' appeals to honesty were nothing more than a reminder to Dassey that he had a moral duty to tell the truth (46:9). In the context of this interview, the Court found that this tactic of misleading Dassey by occasionally pretending to know more than they did was neither improper nor coercive because it did not interfere with Dassey's power to make rational choices (46:9-10).

Interviewers statements such as "we'll stand behind you; we're in your corner; I'll go to bat for you" were an attempt to achieve a rapport with Dassey and convince him that a truthful account of events would be in his best interest (46:10-11).

> Under a totality of the circumstances test, which I'm using here, given Brendan Dassey's relevant personal characteristics as set forth in the previous findings and on the record in this case, the State has met its burden by showing by a preponderance of the evidence that the statements made by Brendan Dassey to Investigators Wiegert and Fassbender, and which are the subject of this motion, were the product of Brendan Dassey's free and unconstrained will reflecting deliberateness of choice. In short, they were voluntary statements.

(46:11).

THIS CASE PRESENTS NO SPECIAL REASONS TO GRANT REVIEW.

Whether the suspect was particularly susceptible to police coercion is a factual question.

*See United States v. Chalan*, 812 F.2d 1302, 1308 (10th Cir. 1987) (Whether the suspect was particularly susceptible to police coercion is subject to review under the clearly erroneous standard.). Appellate courts uphold a circuit court's factual findings unless those findings are clearly erroneous, but courts independently determine whether those facts meet the constitutional standard. *State v. Samuel*, 2002 WI 34, ¶ 15, 252 Wis. 2d 26, 643 N.W.2d 423.

Dassey was not isolated from adult support either during the interviews or between them. Dassey returned to his eighth hour class after his interview at Mishicot High School (46:5; 79:33:44). His mother, Barbara Janda, rode to the Two Rivers Police Department with Dassey (45:15; 79:33:44; 117:7). Wiegert and Fassbender offered Janda the opportunity to sit in on that interview but she declined (45:17; 117:7). She waited in the waiting area (117:7). Dassey did not care whether or not his mother sat in the interview (79:33:44). Dassey spent the day and night of February 28, 2006, at home (119:46).

The record supports the circuit court's factual findings. Dassey did not present evidence to demonstrate the circuit court's factual findings to be clearly erroneous.

A defendant's statements are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist. *State v. Clappes*, 136 Wis. 2d 222, 236,

401 N.W.2d 759 (1987). Courts apply a totality of the circumstances standard to determine whether a defendant's statements are voluntary. *Id.* The totality of the circumstances analysis involves a balancing of the personal characteristics of the defendant against the pressures imposed upon the defendant by law enforcement officers. *Id.*

The relevant personal characteristics of the defendant include the defendant's age, education and intelligence, physical and emotional condition and prior experience with law enforcement. *Id.* The personal characteristics are balanced against the police pressures and tactics which were used to induce the statements, such as: the length of the questioning, any delay in arraignment, the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response and whether the defendant was informed of the right to counsel and right against self-incrimination. *Id.* The State must demonstrate a statement is voluntary by a preponderance of the evidence. *State v. Agnello*, 226 Wis. 2d 164, 182, 593 N.W.2d 427 (1999).

Coercive or improper police conduct is a necessary prerequisite for a finding of involuntariness. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986); *Clappes*, 136 Wis. 2d at 239. There must be an "essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." *Connelly*, 479 U.S. at 165. This does not mean coercion in the broad psychological sense—any conduct overcoming completely free will.

"[V]oluntariness ... has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Id.* at 170. "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164.

Dassey had never been arrested or questioned prior to Halbach's disappearance. But he was interviewed twice in November, 2005 and, four times between February 27, 2006, and March 1, 2006. So on March 1, 2006, he had some experience with police questioning. And his three interviews on February 27, 2006, did not produce any incriminating statements (117:11; 193:38).

The interview here lasted from 10:52 am. to 3:53 pm., a total of five hours; however the last one hour and thirty-five minutes consisted of no questioning (79:30, Exhibit No. 210). So the interview itself lasted three hours and twenty-five minutes. This is not a particularly long interview.

The circuit court found that during the interview Dassey was seated on an upholstered loveseat (46:8). At no time during the interview was Dassey handcuffed or otherwise physically restrained (46:7). The investigators offered soda, water, or food and asked him if he wanted to use the bathroom (46:7). Nothing on the videotape visually depicts Dassey as being agitated, upset, frightened, or intimidated by the questions of either investigator (46:8-9). His demeanor was steady throughout the actual questioning (46:9). He displayed no difficulty in understanding the

questions asked of him (46:9). He answered the questions put to him (46:9). At no time did he ask to stop the interview or request that his mother or a lawyer be present (46:9).

The officers did urge Dassey to be truthful claiming it would be in his best interest. "[A]dvice or exhortation by a police officer to an accused to 'tell the truth' or that 'it would be better to tell the truth' *unaccompanied by either a threat or a promise*, does not render a subsequent confession involuntary...." *State v. Deets*, 187 Wis. 2d 630, 645, 523 N.W.2d 180 (Ct. App. 1994)(emphasis in original). The fact that a defendant seeks a benefit by giving a statement does not make the statement involuntary. *State v. Drogsvold*, 104 Wis. 2d 247, 275, 311 N.W.2d 243 (Ct. App. 1981). "Similarly, coercive conduct does not occur when ... an officer, without promising leniency, tells a defendant that if he or she does not cooperate the prosecutor will look upon the case differently." *State v. Berggren*, 2009 WI App. 82, ¶ 31, 320 Wis. 2d 209, 769 N.W.2d 110.

The officers also claimed they knew more about Halbach's disappearance and death than they did. "The interrogation of a suspect typically requires some deception; a common form of deception is to exaggerate the strength of the evidence against the suspect." *State v. Triggs,* 2003 WI App. 91, ¶ 15, 264 Wis. 2d 861, 663 N.W.2d 396.

> Inflating evidence of [the defendant's] guilt interfered little, if at all, with his "free and deliberate choice" of whether to confess, for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or

innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime. In other words, the deception did not interject the type of extrinsic considerations that would overcome [the defendant's] will by distorting an otherwise rational choice of whether to confess or remain silent.

*Id.* ¶ 19.

Dassey argues that this court should review this case to determine whether certain police interrogation tactics should be deemed coercive *per se* for juveniles. Petition, 15-22. Such an approach is contrary to this court's existing precedent. *Clappes*, 136 Wis. 2d at 236. The United States Supreme Court requires the totality of the circumstance be used to determine whether a statement is voluntary. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (Voluntariness of a confession "must be decided by viewing the 'totality of the circumstances'"). Moreover, the suspect's age already informs the court's assessment of voluntariness. *State v. Lemoine*, 2013 WI 5, ¶ 18, 345 Wis. 2d 171, ___ N.W.2d ___; *State v. Hoppe*, 2003 WI 43, ¶ 39, 261 Wis. 2d 294, 661 N.W.2d 407.

II.  THE COURT OF APPEALS
USED  WELL  SETTLED
PRINCIPLES DICTATED BY
THE  UNITED  STATES
SUPREME  COURT  AND
THIS  COURT  WHEN  IT
REJECTED  DASSEY'S
CLAIM  THAT  LEN
KACHINSKY  PROVIDED
INEFFECTIVE
ASSISTANCE OF COUNSEL.

Dassey argues Len Kachinsky provided
ineffective-assistance-of-counsel.  Kachinsky
represented Dassey from March 8, 2006, until
August 25, 2006 (206:2). Kachinsky withdrew
from representation when the circuit court found
him to be ineffective because he failed to attend a
police interview which he had arranged. The court
required new counsel appointed (206:2-3).

Dassey claimed Kachinsky acted disloyally
by making statements to the media Dassey claims
implied his participation with Avery and thus his
guilt in Halbach's sexual assault, homicide and
the burning of her body (206:4); arranged an
interview with Michael O'Kelly and police, in
which Dassey made incriminating statements
(206:5); and directed O'Kelly to attempt to gather
additional incriminating evidence against Avery,
which would also incriminate Dassey since he
faced party liability (206:5).

To establish ineffective-assistance-of-trial-
counsel, a criminal defendant must show both
deficient performance and resultant prejudice.
*Strickland v. Washington*, 466 U.S. 668, 687
(1984).  In the court of appeals, Dassey claimed

Kachinsky had an actual conflict of interest which required examination under *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance). *See also State v. Kaye*, 106 Wis. 2d 1, 7, 315 N.W.2d 337 (1982). The court of appeals rejected this approach because Dassey could not demonstrate a link between Kachinsky's action and any detriment to him. *State v. Brendan R. Dassey*, No. 2010AP3105-CR, slip op. at 6, ¶ 11 (Wis. Ct. App. Jan. 30, 2013).

Kachinsky did not represent Dassey at the jury trial which adjudicated him guilty. Both Wisconsin cases and Federal cases assume that new conflict-free counsel will remedy any conflict of interest problem. *See, e.g., Sullivan*, 446 U.S. at 351-54; *United States v. Hunt*, 543 F.2d 162, 167-68 (D.C. Cir. 1976); *Kaye*, 106 Wis. 2d at 13-15; *State v. Love*, 227 Wis. 2d 60, 79-83, 594 N.W.2d 806 (1999). Moreover, the United States Supreme Court has expressed doubt that *Sullivan* applies to a defense counsel's personal or financial interest, the type of "conflict" at issue here. *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002).

Dassey argued that Kachinsky's conflict adversely affected his handling of the suppression hearing in his case. As the circuit court found, Kachinsky filed written argument and called Janda (Dassey's mother) and a school psychologist at the suppression hearing (206:11). Dassey complains that Kachinsky conceded the interview was noncustodial. Dassey attributed this concession to Kachinsky's disloyalty.

Kachinsky testified he examined the *Miranda* warning Wiegert and Fassbender gave prior to the March 1, 2006, confession carefully (189:209). He concluded, as did the circuit court, the investigators read the *Miranda* warnings appropriately (190:51; 206:12). Kachinsky also considered whether the February 27 statements affected the *Miranda* warnings given on March 1 (189:215). Kachinsky believed the warning on March 1, 2006, sufficiently independent (189:215). Successor counsel did not think the *Miranda* issue viable (191:229-30).

In view of the circuit court's findings, Dassey cannot demonstrate that Kachinsky could reasonably or even plausibly contend that Dassey's statement should be suppressed based on a *Miranda* failure. Even had he pursued that strategy, it was doomed to failure because Wiegert gave *Miranda* warnings and reminded him of those warning immediately prior to the commencement of the interview.[2] Moreover, the circuit court's finding reinforces the credibility of Kachinsky's testimony that the futility of this argument motivated his concession. Successor counsel's independent conclusion further demonstrates that Kachinsky's decision not to pursue a *Miranda* issue to be reasonable and did not prejudice Dassey.

Dassey does not link his argument about Kachinsky's pre-trial press statements to anything in the case. The pre-trial publicity could

---

[2] *State v. Grady*, 2009 WI 47, 317 Wis. 2d 344, 766 N.W.2d 729, foreclosed Dassey's argument that he received untimely warnings.

only have affected jury selection. But the jury came from Dane County (206:1). And Dassey does not challenge the jury as biased.

Dassey pointed to Kachinsky's direction to O'Kelly to gather evidence which might have been used against Dassey. However, he cannot trace any State's evidence to these efforts. The search warrant of which Dassey complains produced nothing. As to the O'Kelly interview, the circuit court found that nothing except a brief clip of a recorded conversation between Dassey and his mother found its way into the trial. The interview did not include that conversation. Successor counsel did not object to it.

The phone conversation was voluntary. Voluntary statements can be used to cross-examine a testifying defendant even if they have been suppressed as a result of a *Miranda* violation. *Harris v. New York*, 401 U.S. 222, 226 (1971) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."); *State v. Knapp*, 2003 WI 121, ¶ 113, 265 Wis. 2d 278, 666 N.W.2d 881 (The *Miranda* presumption of coercion does not bar the use of voluntary statements for impeachment purposes on cross-examination.).

## CONCLUSION

For the reasons stated above, this Court should deny Dassey's petition for review.

Dated at Madison, Wisconsin, this 20th day of March, 2013.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

*Warren D. Weinst*

WARREN D. WEINSTEIN
Assistant Attorney General
State Bar #1013263

Attorneys for Plaintiff-Respondent

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9444
(608) 266-9594 (Fax)
weinsteinwd@doj.state.wi.us

## CERTIFICATION

I hereby certify that this response conforms to the rules contained in Wis. Stat. § 809.62(4)for a response to petition for review produced with a proportional serif font. The length of this response is 3,274 words.

Dated this 20th day of March, 2013.

*Warren D. Weinst*

Warren D. Weinstein
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE
## WITH WIS. STAT. § (RULE) 809.62(4)(b)

I hereby certify that:

I have submitted an electronic copy of this response to petition for review, excluding the appendix, if any, which complies with the requirements of Wis. Stat. §§ (Rules) 809.62(4)(b) and 809.19(12).

I further certify that:

This electronic response to petition for review is identical in content and format to the printed form of the response to petition for review filed as of this date.

A copy of this certificate has been served with the paper copies of this response to petition for review filed with the court and served on all opposing parties.

Dated this 20th day of March, 2013.

_Warren D. Weinstein_
Warren D. Weinstein
Assistant Attorney General