STATE OF WISCONSIN : CIRCUIT COURT : MANITOWOC COUNTY
BRANCH 3

---

STATE OF WISCONSIN,

                PLAINTIFF,        MOTION HEARING

vs.                           Case No. 06 CF 88

BRENDAN R. DASSEY,

                DEFENDANT.

---

**DATE:**    AUGUST 25, 2006

**BEFORE:**  Hon. Jerome L. Fox
          Circuit Court Judge

**APPEARANCES:**

       KENNETH R. KRATZ
       Special Prosecutor
       On behalf of the State of Wisconsin.

       LEONARD D. KACHINSKY
       Attorney at Law
       On behalf of the Defendant.

       BRENDAN R. DASSEY
       Defendant
       Appeared in person.

* * * * * * * *

**TRANSCRIPT OF PROCEEDINGS**

Reported by Jennifer K. Hau, RPR

Official Court Reporter

49

1

```
 1          THE COURT:  This is in the matter of the
 2     State of Wisconsin vs. Brendan R. Dassey.  It's Case
 3     No. 06 CF 88.  Appearances, please?
 4          ATTORNEY KRATZ:  The State of Wisconsin
 5     appears by Calumet County District Attorney Ken
 6     Kratz.  I'm appearing as special prosecutor.
 7          ATTORNEY KACHINSKY:  Defendant appears
 8     personally with Attorney Len Kachinsky.
 9          THE COURT:  All right.  Originally, this
10     date and time was set as a scheduling conference.
11     New issues have arisen since we set this date.  The
12     Court intends to treat all the matters it believes
13     it has before it now.
14          Um, on August 14, 2006, Attorney
15     Kachinsky filed with the Manitowoc County Clerk
16     of Courts's office a demand for speedy trial.
17     Under Wisconsin Section 971.10 (2), the trial of
18     a defendant shall commence within 90 days from
19     the date the defendant demands in writing his
20     trial.  That demand was filed, as I said, on
21     August 14, 2006.  Therefore, I'm setting the
22     trial in this matter to -- for November 1 through
23     the 17, 2006.
24          Prior to this demand for speedy trial,
25     the Court had set February 5, 2007, as the
```

2

1  beginning date for the trial.  In light of Judge

2  Willis' decision to try State v. Avery, a case

3  filed approximately four-and-a-half months before

4  this case, uh, commencing on February 5, that

5  time period is no longer available.  While I have

6  set November 1, 2006 as the start date for this

7  case, that trial time may be subject to a motion

8  for continuance, or continuances, depending on

9  circumstances.

10         There's also a motion for change of

11  venue under 971.22 filed by the defendant on

12  March 17, 2006.  That motion was supported by

13  Mr. Kachinsky's affidavit detailing why he didn't

14  think the defendant could get a fair trial in

15  Manitowoc.  Essentially, the affidavit said he

16  couldn't get a fair trial because of the nature

17  and extent of the pretrial publicity not only

18  associated with this case but with the case of

19  State v. Steven Avery.

20         The Court sets, uh, September 14, 2006

21  at 8:30 a.m. as the date and time for hearing

22  that motion.  Again, understanding that, uh --

23  depending on circumstances, that time may have to

24  be changed.

25         On August 15, 2006 the Court received

3

1    from the State Public Defender's Office, from

2    Deborah Smith, a copy of a letter purportedly

3    sent to Attorney Kachinsky dated August 14, 2006.

4    That letter reads in material part as follows:

5            Dear Mr. Kachinsky:  I have received and

6    reviewed a report from the Director of the

7    Assigned Counsel Division, Deborah Smith.  She is

8    recommending that you be decertified from the

9    Class A felony appointment list and the Trial 3,

10   Class B-D felony list.  Her recommendation is

11   based on your failure to provide competent

12   representation in the Brendan Dassey case.  You

13   have confirmed to her that you allowed law

14   enforcement to interview your client on May 13,

15   2006 in your absence.  You've confirmed to her

16   that you were not present at the interview on

17   May 13, 2006 because you had to attend army

18   reserve training that weekend.  It is difficult

19   to imagine a situation when it would be

20   appropriate to allow a client in a serious felony

21   case to give a statement in the attorney's

22   absence.  To allow such an interview in this case

23   is indefensible.

24           I'm removing you from Class A felony and

25   Trial 3 certifications.  It is no longer

4

```
 1     appropriate for us to appoint you to these types
 2     of case.  Judge Fox will be provided with a copy
 3     of this letter.  You have the right to appeal
 4     this decision pursuant to Administrative Code PD
 5     1.06(2).  A written notice of appeal must be
 6     received by me within 30 days.
 7              That letter is actually signed by the
 8     State Public Defender Nicholas Chiarkas.
 9              Uh, I received it, uh, in conjunction
10     with a letter sent to me.  And I'll read that
11     letter:
12              Dear Judge Fox:  Please find enclosed a
13     copy of a letter sent to Mr. Kachinsky advising
14     him that we have removed him from our Class A
15     felony certification list.  We have taken this
16     unusual action based on his actions in the
17     Brendan Dassey case.  We no longer feel it is
18     appropriate for him to provide representation in
19     these types of cases to public defender clients.
20     If you have any questions about our action,
21     please contact me.
22              And that is signed, uh, Deborah Smith,
23     who is the Director of the Assigned Counsel
24     Division of the State Office of Public Defender.
25              In response to that, Attorney Kachinsky
```

5

has filed a motion to withdraw as counsel. That motion which is part of the record in this matter notes -- And I'm not going to go through the entirety of the motion but I'm going to note a few things. Uh, among the factors the undersigned attorney believes the Court should consider are the following:

One, alleged inadequate performance of existing counsel.

Two, whether or not the alleged inadequate performance of counsel had an adverse impact upon the defendant.

Three, the history of outside forces seeking to secure withdrawal of existing counsel.

Four, the wishes of the defendant and his mother that existing counsel continue to represent the defendant.

Five, the impact of new counsel upon the defendant's demand for a speedy trial.

And, six, public confidence in the administration of justice.

Mr. Kachinsky supported that motion with what I'll describe as a very thorough affidavit. In that affidavit -- And, again, I'm not going to read the affidavit word for word. I'm going to

6

1    summarize it.  And when I'm done summarizing it,
2    I'm going to ask Mr. Kachinsky if I fairly
3    characterized it and ask him if he has anything
4    further to add.
5          What he discusses in the affidavit is as
6    follows:
7          Number one, his background as a defense
8    lawyer, much of which was placed on the record at
9    a hearing held on June 2, 2006 when Brendan
10   Dassey, uh, said he sought to replace Mr.
11   Kachinsky as his court appointed counsel.
12         Two, his belief that others have been
13   seeking to replace him as counsel.  He
14   specifically -- specifically mentions one of
15   Steven Avery's attorneys as one who suggested to
16   the defendant's mother that Attorney Kachinsky
17   should be replaced.
18         Three, he mentions the services that he
19   has provided the defendant as well as the
20   interaction with the defendant.
21         Four, he sets forth his rationale for
22   permitting the defendant to be interviewed on
23   May 13, 2006 in his absence.  Specifically, he
24   says that his investigator interview -- excuse
25   me -- that his investigator interviewed the

                              7

1    defendant on May 12, 2006 and obtained, quote,

2    new information, end quote, from the defendant,

3    some of which related to physical evidence which

4    might be destroyed if other parties became aware

5    of it.

6           Attorney Kachinsky had a scheduled army

7    reserve drill that weekend so he gave the

8    defendant the option to speak with authorities

9    either on May 13, 2006, the date of his reserve

10   drill and for which he was unavailable, or May

11   17, 2006, the first day he was available.

12          The defendant chose to have the

13   interview on May 13, 2006.  Attorney Kachinsky

14   made arrangements to have his investigator

15   present at the interview.  The interview was

16   limited to clarifications -- and, again, this is

17   from Mr. Kachinsky's affidavit -- clarifications

18   of Mr. Dassey's March 1, 2006 interview, and

19   Attorney Kachinsky would be available by cell

20   phone to answer any questions.

21          Subsequent to the interview,

22   Mr. Kachinsky reviewed the tapes and a

23   transcript.  He found the investigators had

24   complied with the agreed upon conditions.

25          The affidavit then alludes to the letter

                          8

from the public defender's office, uh, suggesting
the public defender may have learned of the May
13, 2006 interview from counsel for Steven Avery.

Attorney Kachinsky also opines that the
public defender's letter of 8 -- of August 14,
2006 may have been written to, in his words, and
I'm quoting, maximize negative publicity, end
quote.

He points out that the decertification
is prospective, that means forward, and,
therefore, does not apply to this case. He
questions the state public defender's conclusion
that his nonappearance at the May 13, 2006
interview was, quote, indefensible, end quote.
Uh, he does this by citing to federal court
practices where in some instances counsel need
not be present during certain meetings and
debriefings of their client.

Finally, he notes that both the
defendant and his mother have requested that he
remain on the case as defendant's attorney.

Before I talk to Mr. Kachinsky, uh, I
would like to point to, uh, one thing. I would
like to correct his assertion on page three of
the affidavit where he says, referring to the

9

May 13 interview, quote, however, the information
provided did not appreciably increase the
strength of the State's case against Dassey.  The
Court made such a finding on June 2, 2006 when it
denied the State's motion to increase the amount
of the bond, end quote.

The Court made no such finding on, uh,
June 2, 2006.  What the Court found -- And the
Court has not seen the interview nor read a
transcript of it.  But what the Court found was
that the interview may have changed the texture
of the case.  I think it was the -- the special
prosecutor's point that the interview as well as
some additional evidence that had been educed,
uh, since March 1 had, in effect, and he didn't
say this but I will, made a good case better.

Uh, I believe I said, and I reviewed the
transcript, that the -- I thought that the -- the
interview of May 13, based on what I saw in the
special prosecutor's petition supporting his
motion to -- to increase bail, may have changed
the texture of the case but the case
qualitatively remained the same.  The same crimes
were charged and the same penalties applied to
the crimes that were charged.

10

```
 1              I should point out that Mr. Kachinsky,

 2     uh, supplemented his affidavit with a curriculum

 3     vitae of his investigator.  Additionally, he

 4     supplemented that with an affidavit from the

 5     investigator which I received by fax yesterday.

 6              Now, I'm going to ask you,

 7     Mr. Kachinsky, have I accurately summarized your

 8     motion and affidavit?

 9              ATTORNEY KACHINSKY:  Uh, yes, Your Honor,

10     you have.

11              THE COURT:  Is there anything -- Uh, you

12     better turn your mike on.  I --

13              ATTORNEY KACHINSKY:  Uh, yes, Your Honor,

14     the Court --

15              THE COURT:  Hit the button.

16              ATTORNEY KACHINSKY:  There we go.

17              THE COURT:  Yeah.

18              ATTORNEY KACHINSKY:  Uh, the Court's --

19     uh, Court's summarization, uh, is accurate, yes.

20              THE COURT:  Is there anything that you wish

21     to add today?

22              ATTORNEY KACHINSKY:  Uh, yes, Your Honor, I

23     would.  Um, and in particular, uh, regarding item

24     number ten on page five, wishes of -- of the

25     defendant and his mother, uh, at the time that this
```

11

was composed and written, I had spoken to Mr. Dassey
last Friday and also last -- and also to his -- him
and his mother, uh, Sunday, uh, at that time that
was their wishes that I remain on the case.

Uh, subsequently, uh, yesterday morning
approximately 11:00 or so I received a call from
TV-11 indicating that there had been a phone call
they had received from Barbara Janda indicating
that they had changed -- or at least that Barbara
Janda had changed her mind as to what, uh,
Brendan wished to do regarding my continued, uh,
representation. Uh, they came to my office to
play the tape and, indeed, uh, according to the
Barbara Janda tape I listened to, uh, she no
longer believed -- or at least stated the same
thoughts on that issue as she did on the evening
of, uh, Sunday.

So, that -- that appears to have
changed. I briefly spoke to Barb Janda, uh, just
before court and she confirmed nothing had
changed since yesterday. I've not, uh -- And
I -- excuse me -- just spoke, to, uh, Brendan a
couple minutes ago and he also indicated that
he'd changed his mind since, uh, we spoke on
Friday and Sunday of last week. So that has

changed.

Um, as a result of that, Your Honor, um, as to what my personal wishes are in the case, uh, frankly, I was willing to continue on with this case, and without a lot of vehement, uh, objection, uh, prior to that incident, uh, if Brendan Dassey had confidence in me, uh, as his attorney, I was more than willing to continue in spite of all the, uh, hubbub, um, in the media and with the State Public Defender's Office and, uh, everything else.

However, in light of Mr. Dassey's wish, uh, to get a new attorney, uh, that changes my position. I think in a case, uh, as serious as this, that, um, Mr. Dassey should, uh, have an attorney that he has, uh -- has confidence in.

In addition, it's unreasonably dis -- difficult from my standpoint to, um, effectively represent a client whose mind on various issue changes, um, as often as Mr. Dassey's, uh, does, and I believe it would probably, in light of that, be in his best interests now, uh, to, uh, get a new attorney even though I feel my representation has been, uh, certainly adequate in a constitutional sense and, uh, up to and

13

```
 1    including more recent, uh, motions that have been

 2    filed that he asked me to.

 3            But because, uh, he now wishes me to

 4    withdraw and because, whatever the cause might

 5    be, it might be loss of confidence caused by the,

 6    uh, State Public Defender letter or whatever,

 7    that I think it would best that he start over

 8    with a new attorney.  The Court, of course,

 9    decides contrary, uh, that's -- that's the

10    Court's prerogative.  But that's my personal

11    desire.

12            THE COURT:  All right.  Would you give

13    Mr. Dassey the microphone, please?  Mr. Dassey, you

14    were here on May 26, 2006 and June 2, uh, 2006, and

15    each of those times I asked you if you wished to

16    have new counsel appointed for you.  On each of

17    those occasions you said, yes.  Do you remember

18    that?

19            THE DEFENDANT:  Yeah.

20            THE COURT:  Uh, Mr. Kachinsky, in his

21    affidavit, says at the time at least that the

22    affidavit was constructed that you wished him to

23    remain on the case.  Was that true?

24            THE DEFENDANT:  Yeah.

25            THE COURT:  Uh, he also says that you may
```

14

```
 1     have changed your mind.  So, I'm going to ask you,

 2     what is your wish as of today?

 3                 THE DEFENDANT:  That I want him off the

 4     case.

 5                 THE COURT:  You remember you and I had a

 6     discussion of that on June 2?  I asked you a number

 7     of questions?  You recall that?

 8                 THE DEFENDANT:  Yeah.

 9                 THE COURT:  Is there any particular reason

10     that you want him off the case?

11                 THE DEFENDANT:  That I think he's not

12     helping me very much.

13                 THE COURT:  Are you telling me that you

14     don't think he is rendering you the assistance you

15     think you ought to be getting?

16                 THE DEFENDANT:  Yeah.

17                 THE COURT:  Do the two of you still get

18     along?

19                 THE DEFENDANT:  Yeah.

20                 THE COURT:  Any arguing?  Fighting?

21                 THE DEFENDANT:  No.

22                 THE COURT:  Does he listen to you when you

23     tell him something?

24                 THE DEFENDANT:  Yeah.

25                 THE COURT:  Was there anything about the
```

15

```
 1      letter from the public defender -- Did you see that
 2      letter incidentally?

 3              THE DEFENDANT:  Yeah.

 4              THE COURT:  And someone talked to you about
 5      it?  Was there anything about that that upset you?

 6              THE DEFENDANT:  No.

 7              THE COURT:  That -- that wasn't a -- a
 8      cause for upset, huh?

 9              THE DEFENDANT:  No.

10              THE COURT:  Basically, you think that he
11      isn't acting in your best interest?  And I don't
12      want to put words in your mouth.  But is -- Uh, let
13      me rephrase that.  Do you think he's acting in your
14      best interests?

15              THE DEFENDANT:  I don't get what you're
16      saying.

17              THE COURT:  Okay.  Do you think he's on
18      your side?

19              THE DEFENDANT:  Not really.

20              THE COURT:  And that's because he doesn't
21      listen to you?

22              THE DEFENDANT:  Well, he listens to me
23      but --

24              THE COURT:  Doesn't do what you want him to
25      do?
```

1          THE DEFENDANT:  Yeah.

2          THE COURT:  All right.  Mr. Kratz, at this

3    stage is there anything that you wish to add to the

4    record?

5          ATTORNEY KRATZ:  Your Honor, as I

6    previously, uh, noted to the Court, I think the

7    record, uh, needs to, uh, include the fact that, uh,

8    decertification by the public defender's, uh,

9    office, if, in fact, uh, that occurs, that, of

10   course, can be withdrawn.  But, if, in fact, that is

11   the result, uh, does not amount to any, um,

12   ineffective assistance, at least from a -- a

13   constitutional, um, basis, we'd certainly need to

14   have an outcome before that could ever be

15   determined.

16          This Court also is aware that, uh,

17   regarding the appearance of propriety, that is,

18   if the Court, uh, decided to act under its

19   supervisory authority, uh, that the State, uh,

20   was requesting, uh, an evidentiary hearing, not

21   only as to the circumstances surrounding the

22   taking of the, uh, May 3, uh, statement, um, but

23   what investigation, if any, the State Public

24   Defender, uh, performed in coming to their, uh,

25   indefensible representation conclusion.

                        17

1      Uh, also that, uh, this Court

2  understands the State's concern as to

3  Mr. Kachinsky's performance, or the appearance of

4  his performance, having an implication on the

5  admissibility of that, uh, May 13 statement, this

6  Court understands that we will need a hearing,

7  um, regardless, on, uh -- on that particular

8  issue.

9      And so, um, I now hear Mr., um, Dassey,

10 uh, although not citing any specifics as to what

11 Mr. Kachinsky won't do for him, uh, hear his, um,

12 stated belief that Mr. Kachinsky is not on his

13 side.  It is the defendant's, uh, Sixth Amendment

14 right, after all, and obviously if this Court is,

15 uh, persuaded that Mr. Dassey's making this

16 decision, uh, of his own free will, that it's

17 freely, voluntarily, without, uh, coercion or,

18 um, anything along those lines from family

19 members or outside influences, then the Court

20 certainly is free to grant, uh, Mr. Dassey's

21 request and, in turn, Mr. Kachinsky's, uh, motion

22 to withdraw.  Other than that, Judge, the State

23 has no further position.  Thank you.

24      THE COURT:  All right.  I -- I believe I

25 understands -- understand the State's position.  I'm

18

not necessarily sure -- In fact, I don't agree with
it.  I don't agree with the position the State has
with respect the evidentiary hearings on this
matter.  Uh, I do understand that, uh, most, if not
all, ineffective assistance of counsel motions
are -- are held after the matter is over so there is
a result that one looks at.  But I think we have
something a little bit different here.

Uh, Counsel is, of course, correct.  The
Sixth Amendment to the U.S. Constitution, as well
as Article I, Section VII of the Wisconsin -- the
Wisconsin Constitution guarantee a defendant,
such as Mr. Dassey, in criminal cases the right
to counsel.

Uh, the U.S. Supreme Court, in a case
called **Wheat v. The United States**, at 486 U.S.
153, specifically at page 159, said, while the
right to select and be represented by one's
preferred attorney is comprehended by the Sixth
Amendment, the essential aim of the amendment is
to guarantee an effective advocate for each
criminal defendant rather than to ensure that a
defendant will be inexorably represented by the
lawyer whom he prefers.  End of the quote.

Now, **Wheat** was a case involving a court

19

overriding a defendant's desire for a specific person as counsel.  Incidentally, a privately paid, uh, attorney.  It has a different factual context than the case that is before us today.

Nonetheless, I believe in the body of the case it identifies a number of the courts' and this Court's institutional concerns. Concerns which I believe are applic -- applicable here despite the factual differences in the cases.  Uh, those concerns are -- are synthesized or brought together in a Wisconsin case called *State v. Love* at 227 Wis. 60 at, uh, page 81 and, uh, it says as follows:

First, the court's institutional interest is in ensuring that criminal trials are conducted within the ethical standards of the profession.

Second, the court's institutional interest is in ensuring that legal proceedings appear fair to all who observe them.

Third, a court's institutional interest is that the court's judgments remain intact on appeal and be free from future attacks over the adequacy of the waiver or fairness of the proceedings.

20

1    This Court has previously denied this

2    defendant's request to replace Attorney Kachinsky

3    because the Court did not believe good cause had

4    been shown as required by law.

5    Uh, if we remember back to the June 2

6    hearing, I alluded to a case called *State v.*

7    *Wanta* at 224 Wis. 679, specifically at, uh, page

8    703, which enumerated some examples of good cause

9    that would permit the -- permit the substitution

10   of counsel.  Attorney incompetency, conflict of

11   interest, irreconcilable differences, complete

12   breakdown in communication.

13   Now, these are just illustrations.

14   These are not an exhaustive list of what

15   constitutes good cause.  But it has to be said

16   that the same showing of good cause is required

17   if the client is seeking to replace appointed

18   counsel or appointed counsel is asking to

19   withdraw from the case.

20   Appointed counsel in cases such as this,

21   and, uh, I'm sure Attorney Kachinsky is well

22   aware of that, can only be relieved of his

23   obligation to defend this defendant if good cause

24   is shown.

25   Here, we have appointed counsel who has

21

1    lost his public defender certification to accept

2    appointments in Class A through D felonies.

3    Categories in which two of the charges against

4    this defendant fall.

5           Admittedly, this is a prospective

6    decertification, not applicable to this case and

7    subject to Mr. Kachinsky's right to appeal.

8    Nonetheless, and I think this is -- this is the

9    overarching point, it is for actions that took

10   place in this case.  He allowed his 16-year-old

11   client, who previous testimony has disclosed to

12   have cognitive ability within borderline to below

13   average rain -- range to be interviewed by law

14   enforcement officials without his attorney

15   present.

16           While Mr. Kachinsky sent his

17   investigator with Mr. Dassey on May 13, 2006 to

18   the interview and made himself available by cell

19   phone, that is not in this Court's opinion

20   enough.  He is the lawyer for Mr. Dassey.  This

21   is a major case.  His client is a young man with

22   intellectual deficits.  Attorney Kachinsky should

23   have in the course of his representation of

24   Mr. Dassey been there with his client.

25           The Court believes that Attorney

22

1   Kachinsky's failure to be present while his

2   client gave a statement to investigators, a

3   statement which, according to the special

4   prosecutor's petition filed May 17 supporting his

5   motion to increase bail, provided new information

6   to authorities on the crimes charged here, I

7   believe that constituted deficient performance on

8   Attorney Kachinsky's part.  This performance,

9   coupled with the subsequent State Public Defender

10  certification, raises at the least a threshold

11  question of confidence and puts any further by --

12  representation by Attorney Kachinsky of

13  Mr. Dassey under a cloud of uncertainty.  This is

14  not the kind of assistance of counsel a defendant

15  should have.

16          I believe the reasons he gave for not

17  being at the interview are insufficient to excuse

18  his presence.  His duty in this case in these

19  circumstances was to his client and is to his

20  client.

21          Moreover, whether or not his failure to

22  appear was reported to the State Public Defender

23  by some other attorney inv -- involved in a

24  companion case is neither here nor there.  It is

25  his actions about which we are concerned, not who

23

reported them.

The Court believes that this episode constitutes good cause for withdrawal and, accordingly, I will grant his motion to withdraw.

Additionally, the Court believes Attorney Kachinsky -- Kachinsky's withdrawal is necessary to assure the entire proceeding be viewed as fair and trying to ensure that we can maintain public confidence in the administration of justice and the fair administration of justice.

Let me go back again to -- to one of the institutional concerns I mentioned in conjunction with *Wheat v. The United States*:

That is the third concern. A court's institutional interest that the court's judgments remain intact on appeal and be free from future attacks over the adequacy or fairness of the proceedings.

If this case has to be tried, I want to do my level best to make sure that it is tried only once. The prosecution, the defense, the families involved, the system deserve no less. Accordingly, I -- as I have said, I'm going to grant Mr. Kachinsky's motion to withdraw. The

24

| | |
|---|---|
| 1 | Court proposes to prepare the order and I'll have |
| 2 | staff notify the State Public Defender's Office. |
| 3 | Anything further for this afternoon, gentlemen? |
| 4 | ATTORNEY KRATZ: Just how that may |
| 5 | implicate the, uh -- the trial and change of venue |
| 6 | dates, Judge. I don't know, um, how the State, uh, |
| 7 | may particularly may be, um, included in the, um, |
| 8 | decision to, uh, appoint new counsel or how this |
| 9 | Court, uh, will be informed of that. I assume we |
| 10 | will need some kind of a scheduling, uh, conference, |
| 11 | uh, very soon thereafter. |
| 12 | THE COURT: Mr. Kachinsky? |
| 13 | ATTORNEY KACHINSKY: Uh, Your Honor, one |
| 14 | problem that always seems -- occurs in, uh, |
| 15 | withdrawal of counsel from cases is getting the |
| 16 | file to successor attorney. Uh, if Mr. Dassey |
| 17 | would, uh, consent on the record, I can just do |
| 18 | that and not have to require the new attorney to |
| 19 | go through the paperwork shuffle that -- |
| 20 | THE COURT: All right. Mr. Dassey, do you |
| 21 | understand what Counsel has said? |
| 22 | THE DEFENDANT: Yeah. |
| 23 | THE COURT: Uh, he has accumulated what I |
| 24 | would guess to be a substantial file at this point. |
| 25 | Uh, do you have any objection to having that file |

25

```
 1    passed onto successor counsel as soon as that person
 2    is appointed?
 3              THE DEFENDANT:  No.
 4              THE COURT:  All right.  Uh, I'll include
 5    that -- I'll include that in the order.  And,
 6    Mr. Kratz, getting back to you just for a moment,
 7    uh, rest assured we'll have a scheduling conference
 8    the -- the -- the moment, uh, I'm alerted to whoever
 9    it is that's been appointed as successor counsel.
10    Anything else, gentlemen?
11              ATTORNEY KRATZ:  Nothing, Judge.  Thank
12    you.
13              ATTORNEY KACHINSKY:  No, Your Honor.
14              THE COURT:  All right.  We're adjourned.
15              ATTORNEY KACHINSKY:  Thank you.
16              (PROCEEDINGS CONCLUDED.)
17
18
19
20
21
22
23
24
25
```

26

```
 1    STATE OF WISCONSIN   )
                           )SS.
 2    COUNTY OF MANITOWOC  )

 3

 4              I, Jennifer K. Hau, Official Court

 5         Reporter for Circuit Court Branch 3 and the State

 6         of Wisconsin, do hereby certify that I reported

 7         the foregoing matter and that the foregoing

 8         transcript has been carefully prepared by me with

 9         my computerized stenographic notes as taken by me

10         in machine shorthand, and by computer-assisted

11         transcription thereafter transcribed, and that it

12         is a true and correct transcript of the

13         proceedings had in said matter to the best of my

14         knowledge and ability.

15              Dated this 6th day of September, 2006.

16

17

18

19         Jennifer K. Hau, RPR
           Official Court Reporter

20

21

22

23

24

25

                           27
```

```
 1   STATE OF WISCONSIN  )
                         )SS.
 2   COUNTY OF MANITOWOC )

 3

 4              I, Jennifer K. Hau, Official Court

 5       Reporter for Circuit Court Branch 3 and the State

 6       of Wisconsin, do hereby certify that I reported

 7       the foregoing matter and that the foregoing

 8       transcript has been carefully prepared by me with

 9       my computerized stenographic notes as taken by me

10       in machine shorthand, and by computer-assisted

11       transcription thereafter transcribed, and that it

12       is a true and correct transcript of the

13       proceedings had in said matter to the best of my

14       knowledge and ability.

15              Dated this 6th day of September, 2006.

16

17

18                       _Jennifer K. Hau_____

19                       Jennifer K. Hau, RPR
                         Official Court Reporter
20

21

22

23

24

25

                             27
```