IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRENDAN DASSEY, | ) |
| Petitioner, | ) |
| v. | ) No. 14-CV-1310 |
| BRIAN FOSTER, Warden, Green Bay Correctional Center, | ) |
| Respondent. | ) |

## REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Brendan Dassey, by undersigned counsel, respectfully submits this reply in support of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I. Petitioner Brendan Dassey is entitled to *de novo* review under 28 U.S.C. 2254(d)(2) because the state court made an unreasonable factual determination concerning the ways in which Attorney Kachinsky's disloyalty adversely affected trial.**

In its Memorandum in Opposition, the Respondent makes an important error: It argues that this Court may conclude that the state court made an unreasonable factual determination under 28 U.S.C. 2254(d)(2), and thereby proceed to review Dassey's claim of ineffective assistance of counsel *de novo*, only if the governing federal law can be considered "clearly established." Dkt. 20:14-15. This position wrongly conflates 28 U.S.C. 2254(d)(2) with 28 U.S.C. 2254(d)(1) and ignores supporting caselaw.

The text of the AEDPA statute itself makes clear that section 2254(d)(1), which makes relief available if a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," is an entirely separate basis for relief than section

1

2254(d)(2), which is separated from section 2254(d)(1) by an important "or." Section 2254(d)(2) makes relief available – without any reference to whether governing law is "clearly established" – so long as the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." For this reason, "the terms of Section 2254(d)(2) do not limit a federal court's power to grant a writ to situations in which a state court acted in violation of 'clearly established Federal law.'" *Drake v. Portuondo*, 553 F.3d 230, 239 n.4 (2nd Cir. 2009) (reversing district court's denial of relief); *see also Davis v. Grigas*, 443 F.3d 1155 (9th Cir. 2006) (finding that *Strickland v. Washington* was not clearly established federal law for the purposes of petitioner's sentencing-related ineffective assistance of counsel claim, but nonetheless concluding that the state court's decision was based in part on an erroneous factual determination under 2254(d)(2) and thus reversing the district court's denial of habeas relief). Even the United States Supreme Court held in *Thaler v. Haynes* that federal law requiring an assessment of demeanor for a *Batson* challenge was not "clearly established" for AEDPA purposes, but it nevertheless remanded to the Court of Appeals for an evidentiary hearing to evaluate whether the state court made an unreasonable determination of fact under 2254(d)(2). 559 U.S. 43 (2010). Plainly, whether federal law can be considered "clearly established" under Section 2254(d)(1) has no relation to whether relief is available under 2254(d)(2).

Such relief under 2254(d)(2) is warranted here. Any fair reading of the Wisconsin Court of Appeals' opinion shows that the Court made an unreasonable factual determination when evaluating the degree of harm flowing from Attorney Kachinsky's efforts to incriminate his own client. It failed to understand that the May 13 telephone call, which was a direct product of Kachinsky's disloyal actions, was used against Dassey in three different ways at trial: during cross-examination of Dassey, during cross-examination of a defense psychologist who opined

2

about Dassey's suggestibility during interrogation, and during closing argument as the *only piece of evidence* that negated Dassey's alibi.[1]  Dkt. 19-20:50-52; 19-21:32-39; 19-21:122-23; 19-22:56-57.  Respondent tries to argue that the Court of Appeals was not technically wrong to claim that the phone call was "introduced" only once, apparently suggesting that the Court of Appeals was using "introduced" as a synonym for "admitted into evidence."  Dkt. 20:15.  This defense, however, renders the Court of Appeals' decision nonsensical.  In the context of weighing the degree to which Kachinsky's disloyalty adversely affected Dassey's trial, the Court of Appeals stated that it was "significant" that the May 13 telephone call was "introduced" only once to rebut Dassey's direct testimony; but every piece of evidence, even the most damning, is "introduced" into evidence only once.  Dkt. 1-5:6.  Such a commonplace occurrence cannot be "significant," nor can it be relevant to an assessment of adverse effect.  Rather, the Court of Appeals was obviously using the term "introduced" to drive at the number of ways in which the telephone call was used against Dassey, and, in turn, the degree to which that call adversely affected Dassey's trial.  It unreasonably misapprehended both of these matters, thus entitling Dassey to relief under 28 U.S.C. 2254(d)(2).

The Respondent suggests that the state court's factual error was somehow unimportant to its ruling.  Dkt. 20:15-16.  But the Wisconsin Court of Appeals itself expressly stated that its

---

[1] Respondent claims that the May 13 phone call "bolster[ed] the timeline Dassey had already provided in his March 1 confession" to police. Dkt. 20:7. That is not correct. Dassey's March 1 confession told a story in which Dassey stopped by his uncle's trailer at about 4:00 or 4:30 PM to deliver the mail and ended up participating in the assault, murder, and burning of Halbach's body that afternoon. Dkt. 19-26:562, 565-574. On the May 13 phone call, Dassey's mother tells him that his March 1 timeline must be incorrect because she saw him at their own home around 5:00 PM and was at home to answer the phone at 6:00 PM, at which point Dassey claimed that he had been at his uncle's house after school but came back to his family's home around 5:00 PM. Dkt. 19-35:5.  He went on to tell her that after speaking to her and, as the State argued in closing, speaking to his alibi witness on the phone, he later returned to his uncle's house to commit the crimes at night. Dkt. 19-35:5.

3

factual determination concerning the use of the call at trial was "significant" to its decision. Dkt. 1-5:6. It should be taken at its word and its error deemed equally significant. Such a "significant" error, in turn, surely satisfies the "based on" clause of 2254(d)(2). *See, e.g.*, *Davis v. Grigas*, 443 F.3d 1155 (9th Cir. 2006) (holding that "the Nevada Supreme Court's decision was based, *at least in part*, on an unreasonable determination of the facts" and thus remanding for an evidentiary hearing to determine whether relief was warranted) (emphasis added).

The Respondent further asks this Court to find that the state court also ruled against Dassey on the "actual conflict" prong of his *Sullivan* claim, and thus that its factual error concerning the "adverse effect" prong does not matter. Dkt. 20:17. In so arguing, Respondent claims that the state court affirmatively made a "critical determination" that "Dassey has not convinced us that Kachinsky's actions amounted to an actual conflict" – but again this is a misrepresentation of the record. Dkt. 20:17. The full state-court quotation, which is taken from the opinion's summary conclusion paragraph, reads: "Dassey has not convinced us that Kachinsky's actions amounted to an actual conflict and that Kachinsky's advocacy was adversely affected, such that it was detrimental to Dassey's interests." Dkt. 1:5-7. This quotation does not reflect the state court making an independent finding on each prong of *Sullivan*; if it had been doing so, the two prongs would have been separated in the quotation by the word "or." Instead, because the prongs are separated by "and," it is clear that the state court was simply wrapping up its decision in a summary paragraph by stating that the *Sullivan* standard in its totality had not been satisfied without specifying which aspects of the standard had been met and which had not. Nowhere in the opinion does the state court devote even a single word to whether Kachinsky's actions amounted to an actual conflict. But even assuming arguendo that such a finding had been made, the Respondent has cited no case holding that

4

AEDPA contains an unwritten requirement that any 2254(d)(2) error must surpass harmless error review as on direct appeal. Rather, a 2254(d) determination of unreasonability, once identified, leads to *de novo* review under 2254(a). *Mosley v. Atchison*, 689 F.3d 838 (7th Cir. 2012).

In sum, because the Wisconsin Court of Appeals unreasonably found that the May 13 telephone call was used against Dassey in only one instead of three ways, and thus misapprehended the extent and nature of the detriment flowing from that call at trial, Dassey has satisfied the threshold requirements of 28 U.S.C. 2254(d)(2). Petitioner's *Cuyler v. Sullivan* claim related to Kachinsky's disloyalty is therefore entitled to *de novo* review under 28 U.S.C. 2254(a). *Mosley*, 689 F.3d 838.

## II. Petitioner Brendan Dassey is entitled to *de novo* review under 28 U.S.C. 2254(d)(1) because the state court's decision applying *Harris v. New York* to Dassey's *Cuyler v. Sullivan* claim was contrary to clearly established federal law.

In resolving Petitioner's Sixth Amendment *Cuyler v. Sullivan* claim, the Wisconsin Court of Appeals relied on the wrong federal law: *Harris v. New York*, 401 U.S. 222 (1971), a Fifth Amendment case involving the use of voluntary but non-Mirandized statements against a defendant in rebuttal. Dkt. 1-5:6. The Respondent spends not a word in defense of this clear error.

The Wisconsin Court of Appeals' decision must therefore be considered "contrary to…clearly established Federal law" under 28 U.S.C. 2254(d)(1). Regardless of whether *Cuyler v. Sullivan* is "clearly established" law for AEDPA purposes, it is beyond dispute that federal law clearly establishes that *Harris v. New York* applies *only* to Fifth Amendment cases involving the use of non-Mirandized statements against a defendant in rebuttal and has no bearing on a Sixth Amendment claim. *See, e.g.*, *Washington v. Thaler*, 714 F.3d 352, 354 (5th Cir. 2013) (citing *Harris v. New York* for the proposition that "the Supreme Court has clearly established a

5

defendant's Fifth Amendment right to testify"). The Wisconsin Court of Appeals' attempt to apply *Harris* to a Sixth Amendment case was thus "contrary to…clearly established Federal law"; satisfies 28 U.S.C. 2254(d)(1); and warrants *de novo* review of Dassey's Sixth Amendment *Sullivan* claim under Section 2254(a).

### III. Petitioner Brendan Dassey is entitled to *de novo* review under 28 U.S.C. 2254(d)(1) because the state court's decision denying Dassey's *Cuyler v. Sullivan* claim was an unreasonable application of clearly established federal law.

The Respondent argues that *Cuyler v. Sullivan* involved a conflict of interest related to the representation of co-defendants and thus that it does not constitute "clearly established Federal law" applicable to Attorney Kachinsky's efforts to work with the State to incriminate his own client. Dkt. 20:11-14. But there is no requirement that clearly established federal law can be found only in a U.S. Supreme Court case involving an identical fact pattern. The Third Circuit Court of Appeals concluded as much in *Jamison v. Klem*, 544 F.3d 266, 273-74 (3rd Cir. 2008), in which it overturned a denial of habeas relief because it "had never interpreted the standard of review in 2254 to suggest that Congress intended habeas review to turn on whether the Supreme Court had previously decided an issue in a case involving a fact pattern that is identical to the facts underlying a habeas petitioner's claim for federal relief." Rather, the *Jamison* court concluded that the petitioner's challenge "goes to the heart of the principle that was clearly established" in a U.S. Supreme Court case, and thus satisfied the "clearly established Federal law" requirement of 2254(d)(1). *Id.*

The same can be said of Dassey's *Sullivan* claim. Dassey's claim involves a conflict of interest of the most egregious kind: a defense attorney who works with the prosecution to obtain the conviction of his own client. *See Thomas v. McLemore*, 2001 U.S. Dist. LEXIS 6763, at *31 (E.D. Mich. Mar. 30, 2001) (an "obvious" conflict of interest arises when a defense attorney

6

"abandons his or her duty of loyalty to the client and joins the prosecution in an effort to obtain a conviction") (citing *Dixson v. Quarles*, 627 F.Supp. 50, 53 (E.D. Mich. 1985) (discussing *Cuyler* standard)); *U.S. v. Swanson*, 943 F.2d 1070, 1075 (9th Cir. 1991) (an attorney's "abandonment of his duty of loyalty to his client by assisting the prosecutor also created a conflict of interest"); *Osborn v. Shillinger*, 861 F.2d 612, 629 (10th Cir. 1988) (attorney who acted "apparently with the intention to weaken his client's case" suffered from a "conflict in loyalty").[2] Such a conflict of interest "goes to the heart of the principle" established in *Sullivan* – the unacceptability of representation by counsel burdened by an active conflict – and thus meets the "clearly established Federal law" standard of 2254(d)(1). And this Court is authorized to consider such Court of Appeals cases in interpreting the scope of the principle established in *Sullivan*; while U.S. Supreme Court law provides the baseline legal standard, other courts' interpretations and applications of that standard are certainly relevant. *See O'Laughlin v. O'Brien*, 568 F.3d 287 (1st Cir. 2009), *cert. denied*, 558 U.S. 1158 (2010) ("[A]lthough we evaluate the state court decision in light of Supreme Court precedent, we are not precluded from looking at other federal court decisions that may help guide us in applying the [U.S. Supreme Court] standard").

      The Respondent also engages in an overreading of *Mickens v. Taylor*, 535 U.S. 162 (2002). It is true that *Mickens* did discourage the application of *Sullivan* to those conflicts not related to the representation of different entities' interests, such as conflicts involving "personal and financial interests" like a "book deal" or "the teaching of classes to Internal Revenue Service agents." *Id.* at 174. Such conflicts are quite different, obviously, from Attorney Kachinsky's disloyalty. But the thrust of the *Mickens* opinion was to emphasize that *Sullivan* was focused on

---

[2] A properly filed and served copy of *Thomas v. McLemore*, 2001 U.S. Dist. LEXIS 6763 (E.D. Mich. Mar. 30, 2001), can be found at Dkt. 1-8.

"concurrent representation" of conflicting interests – in other words, cases involving an actual conflict of interest that was active *at the time of representation* – in contrast to conflicts arising out of "prior representation" or "successive representation." *Id.* at 175-76. Kachinsky's conflict did not involve prior or successive representation; the problem is not that, for instance, he was formerly a prosecutor before representing Dassey. Rather, the problem is that he actively and concurrently worked for two masters: the prosecutor and (or, often, at the expense of) his own sixteen-year-old client. *Mickens* does nothing to indicate that *Sullivan* is not clearly established federal law for such a troubling concurrent conflict. For these reasons, Petitioner Dassey submits that *Cuyler v. Sullivan* constitutes "clearly established Federal law" applicable to the specific type of concurrent conflict that burdened Attorney Kachinsky; that the Wisconsin Court of Appeals' application of *Sullivan* was unreasonable under 2254(d)(1) as articulated more fully in Petitioner's opening Memorandum at pp. 11-17; and that he is thus entitled to *de novo* review of his claim under Section 2254(a). Dkt. 1-2:11-17.

IV.  **Under *de novo* review, Petitioner Brendan Dassey is entitled to relief on his ineffective assistance of counsel claim based on Attorney Kachinsky's efforts to incriminate his own client and the State's subsequent use of the fruits of those efforts against Dassey at trial.**

Whether by way of 28 U.S.C. 2254(d)(2), 28 U.S.C. 2254(d)(1)'s "contrary to" clause, or 28 U.S.C. 2254(d)(1)'s "unreasonable application" clause – only one of which must be met – Dassey is entitled to have this Court review his claim of ineffective assistance *de novo* under Section 2254(a). *Mosley*, 689 F.3d 838. Under such *de novo* review, Dassey is entitled to relief. As an initial matter, even if this Court finds that *Cuyler v. Sullivan* does not satisfy the "clearly established" term of art for AEDPA purposes, it is free to apply *Cuyler v. Sullivan* in a review unconstrained by AEDPA, and indeed, it would be proper to do so. *See, e.g.*, *Blankenship v. Johnson*, 118 F.3d 312, 318-19 (5th Cir. 1997) (holding, "unfettered by [AEDPA]-mandated

deference," that a defense attorney who was simultaneously employed as a county attorney "actively represented conflicting interests" and thus satisfied the first prong of *Sullivan*).

As for the factual merits of Dassey's ineffective assistance claim, Respondent raises relatively few arguments in opposition. Notably, the Respondent – like the state court – does not spend a single word in defense of Attorney Kachinsky's actions. It does briefly suggest that the May 13 telephone call was not a product of Kachinsky's disloyalty, Dkt. 20:16, but Dassey's own words to his mother during the call – in which he indicates that he had to say he did it because of what his defense team told him, as explicated fully in Dassey's Memorandum at Dkt. 1-2:14-15 – refute this claim. As for the Respondent's arguments that the call was not a product of police coercion, Dassey agrees; the telephone call was a product of Kachinsky's disloyalty, not police coercion, and thus its repeated use against him violated the Sixth Amendment, not the Fifth. Dkt. 20:16.

The Respondent also briefly attempts to parse the degree of harm that flowed from the use of the telephone call at trial, Dkt. 20:16, but the law is clear that such a "harmless error analysis is inappropriate" in the context of a *Sullivan* claim. *Lopez v. Scully*, 58 F.3d 38, 43 (2d Cir. 1994); *U.S. v. Ellison*, 798 F.2d 1102, 1107 (7th Cir. 1986) (relief under *Cuyler v. Sullivan* does not depend on "nice calculations of prejudice") (quoting *Sullivan*, 446 U.S. at 349 (internal citations omitted)). Nonetheless, Petitioner refers this Court to pp. 15-16 of his opening Memorandum, which outlines the profound degree of harm flowing from the telephone call at trial. Dkt. 1-2:15-16. Indeed, trial counsel testified at the state post-conviction hearing that the

9

May 13 call was "damning" evidence "that we, despite putting our heads together, couldn't really come up with any way to defend against."[3] Dkt. 19-28:141.

In sum, because sixteen-year-old Brendan Dassey was represented by an attorney who worked to secure his own client's conviction, and because the fruit of that attorney's labor was introduced against Dassey at trial as "damning" evidence against him, all in violation of the Sixth Amendment guarantee of loyal counsel, Brendan Dassey respectfully requests that this Honorable Court grant him a writ of habeas corpus discharging him from his unconstitutional confinement and restraint, or, in the alternative, that this Court hold an evidentiary hearing if it concludes that the development of further evidence is warranted.

V.  **The Wisconsin Court of Appeals unreasonably determined the facts under 2254(d)(2) when it found that officers were simply "professing to know facts they actually did not have" and that no promises of leniency were made during Brendan's March 1, 2006 interrogation.**

The Respondent's Memorandum in Opposition misapprehends the thrust of Dassey's argument with respect to the Wisconsin Court of Appeals' factual finding that Dassey's interrogators were "professing to know facts they actually did not have." Dkt. 1-5:4. The heart of the problem with Dassey's interrogation is widespread fact-feeding: many of those crime scene details which Dassey got right in his confession were fed to him, on tape, by his interrogators; and those that were not fed were widely known to the public due to media

---

[3] The Respondent notes in its brief that trial counsel did not object to the introduction of the May 13 phone call at trial. Dkt. 20:7. It was made clear at the post-conviction hearing, however, that no such objection was made because Attorney Kachinsky had expunged all evidence of his disloyalty from the file which he produced to successor counsel; therefore, successor counsel did not know anything about the May 13 phone call's origins until the post-conviction proceedings. Dkt. 19-28:130-137; 19-29:226. At those proceedings, Dassey's trial counsel testified that if he had been properly informed that Kachinsky "had no longer been, in my opinion, representing Brendan Dassey" but was instead "working for the State," he would have, among other things, moved to suppress the May 13 phone call on Sixth Amendment grounds. Dkt. 19-28:133.

10

exposure.  Dassey's Memorandum provides a number of powerful examples of police fact-feeding at pp. 19-20, including the most crucial fact in Dassey's confession: his description of the method of killing Halbach.  Dkt. 1-2:19-20.  When Dassey wasn't being fed information about the crime, in contrast, he got facts about the crime wrong or offered facts not capable of being proven true or false.  This includes every fact listed on page 21 of the Respondent's Memorandum in Opposition, most of which are simply incapable of verification, like Dassey's assertions that he heard Halbach screaming or knocked on Avery's trailer door.  Dkt. 20:21.  It is this problem of fact-feeding that the state court so unreasonably and inaccurately mischaracterized as the officers "profess[ing] to know facts that they did not have."  Such fact-feeding, in turn, can render a confession involuntary – a conclusion that this Court should likewise reach upon *de novo* review.  *See, e.g.*, *U.S. v. Preston*, 751 F.3d 1008, 1023-24 (9th Cir. 2014) (en banc) (eighteen-year-old's confession was involuntary where the police just "asked him the same questions over and over until he finally assented and adopted the details that the officers posited"); *State v. Rettenberger*, 984 P.2d 1009, ¶ 40 (Utah 1999) (confession is involuntary when it "contains little information that was not first provided or suggested by the interrogating officers"); *State v. Randle*, 366 S.E.2d 750 (W. Va. 1988) (confession was involuntary when police used suggestive questioning to propose how the crime could have occurred to the suspect).

As for the Wisconsin Court of Appeals' unreasonable finding that no promises of leniency were made during Dassey's interrogation, it is unavoidable that each promise discussed by the Respondent in its Memorandum in Opposition refers explicitly to the *consequences* that Dassey would face if he confessed.  Dkt. 20:22-24. When Investigator Wiegert told Dassey that "by you talking to us, it's, it's helping you," he was inescapably referring to what would happen

11

if Dassey continued talking. When Agent Fassbender told Dassey that he would be "all right" and not "have to worry about things" even if he said things that "might make you look a little bad," he was inescapably referring to what would happen if Dassey incriminated himself while talking. And when Investigator Weigert told Dassey explicitly that "honesty is the only thing that will set you free," he was explicitly linking truth-telling to physical freedom.[4] Such false references to the favorable consequences that flow from speaking to police can and must be understood as promises of leniency. It was unreasonable for the Wisconsin Court of Appeals to conclude otherwise; and Petitioner urges this Court to conclude on *de novo* review that these statements were promises of leniency that, together with the pervasive fact-feeding discussed above, rendered Petitioner's March 1, 2006 confession involuntary.

**VI. The Wisconsin Court of Appeals unreasonably applied clearly established federal law under 2254(d)(1) when it failed to account for Dassey's age and its impact on the voluntariness analysis.**

Nowhere in the Wisconsin Court of Appeals' decision appears any indication that it considered the impact of Dassey's young age – sixteen years old – on the voluntariness of his March 1, 2006 confession. The Respondent attempts to argue that the "applicable" federal law consists of cases other than *Haley v. Ohio*, 332 U.S. 596 (1948), *Gallegos v. Colorado*, 370 U.S. 49 (1962), and *In re Gault*, 387 U.S. 1 (1967). Dkt. 20:26. However, multiple federal Courts of Appeal, including the Seventh Circuit, have identified the *Haley-Gallegos-Gault* line of cases – which emphasize the centrality of youthfulness to the voluntariness analysis – as the applicable "clearly established Federal law" governing the voluntariness of juvenile confessions. *See Hardaway v. Young*, 302 F. 757 (7th Cir. 2002) (recognizing that the *Haley-Gallegos-Gault* line

---

[4] It is absurd and unreasonable to suggest, as Respondent does, that sixteen-year-old, mentally limited Brendan Dassey understood Investigator Wiegert to be quoting verses from the King James Bible. Dkt. 20:23.

12

of decisions represents a clearly established line of U.S. Supreme Court caselaw requiring "special caution when assessing the voluntariness of a juvenile confession"); *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (concluding that the *Haley-Gallegos-Gault* line of decisions clearly establishes that "the fact that Doody was a juvenile is of critical importance in determining the voluntariness of his confession" and reversing denial of writ of habeas corpus on voluntariness and *Miranda* grounds). The Wisconsin Court of Appeals' failure not merely to cite these cases but to apply the analysis demanded therein makes its decision unreasonable under Section 2254(d)(1).[5]

The Respondent excuses the state court's failure to consider the impact of Dassey's youthfulness on the voluntariness of his confession by arguing that the state court properly relied upon Wisconsin state-court cases that incorporate applicable U.S. Supreme Court standards, including leading Wisconsin juvenile voluntariness case *State v. Jerrell C.J.*, 2005 WI 105, 283 Wis.2d 145, 599 N.W.2d 110. Dkt. 20:26. But the *Jerrell C.J.* decision itself insists that a court reviewing a juvenile confession's voluntariness must apply principles of "special caution" articulated by the U.S. Supreme Court in *Haley*, *Gallegos*, and *Gault*: "When applying [the voluntariness] test to a juvenile interrogation, we note that the Supreme Court in the past has spoken of the need to exercise 'special caution' when assessing the voluntariness of a juvenile confession, particularly when there is prolonged or repeated questioning or when the interrogation occurs in the absence of a parent, lawyer, or other friendly adult." *Id.* at P21 (citing *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *In re Gault*, 387 U.S. 1, 45, 18 L.

---

[5] The centrality of these cases to juvenile confession law is also evidenced by the prominent role that *Haley* and *Gallegos*, at least, played in the U.S. Supreme Court's most recent juvenile confession case, *J.D.B. v. North Carolina,* 131 S. Ct. 2394, 2403 (2011) (citing *Haley* and *Gallegos* for the proposition that tactics which may not be coercive when applied to adults may be coercive when applied to juveniles).

Ed. 2d 527, 87 S. Ct. 1428 (1967)); *Gallegos v. Colorado*, 370 U.S. 49, 53-55, 8 L. Ed. 2d 325, 82 S. Ct. 1209 (1962); *Haley v. Ohio*, 332 U.S. 596, 599-601, 92 L. Ed. 224, 68 S. Ct. 302 (1948)). It is plain – whether one looks directly to U.S. Supreme Court caselaw or to state-court decisions applying that caselaw in Wisconsin – that a court must take special care to evaluate the ways in which the voluntariness analysis becomes different when a defendant is a child. Such analysis was not done here, warranting habeas relief.

In sum, Petitioner Dassey respectfully requests that this Court find that the Wisconsin Court of Appeals' opinion that his March 1, 2006 confession was voluntary was unreasonable under either 28 U.S.C. 2254(d)(1) or (d)(2), and upon ensuing *de novo* review, conclude that his confession was involuntary, that its erroneous admission was not harmless, and that habeas relief is warranted.

### VII.    If this Court denies relief, Petitioner Dassey requests a certificate of appealability.

In the event that this Court should deny either or both of Dassey's claims, Dassey respectfully requests a certificate of appealability on any and all denied claims. The instant petition makes a "substantial showing of the denial of a constitutional right" – namely, Dassey's Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination. 28 U.S.C. 2253 (c)(2). While Petitioner believes his claims fully merit habeas relief, at minimum they warrant further review.

Respectfully submitted this 4th day of June, 2015.

**s/Laura H. Nirider**
*Counsel for Petitioner Brendan Dassey*

| | |
|---|---|
| LAURA H. NIRIDER, Esq. | ROBERT J. DVORAK, Esq. |
| Bluhm Legal Clinic (IL Bar No. 15245) | WI Bar No. 1017212 |
| Northwestern University School of Law | Halling & Cayo, S.C. |

14

375 East Chicago Avenue, 8th Floor
Chicago, IL 60611
Telephone: 312-503-2204
Facsimile: 312-503-8977
E-mail: l-nirider@law.northwestern.edu

320 E. Buffalo St., Suite 700
Milwaukee, WI 53202
Telephone: 414-271-3400
Facsimile: 414-271-3841
E-mail: rjd@hallingcayo.com