UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRENDAN DASSEY,

        Petitioner,

v.                               Case No. 14-CV-1310

MICHAEL A. DITTMANN,

        Respondent.

---

## ORDER

### I. Facts and Procedural History

On August 12, 2016, this court granted Brendan Dassey's petition for a writ of habeas corpus. (ECF No. 23); *Dassey v. Dittmann*, 2016 WL 4257386, 2016 U.S. Dist. LEXIS 106971 (E.D. Wis. Aug. 12, 2016). The court concluded that, when viewed collectively, various assertions and assurances the investigators repeatedly made to Dassey amounted to false promises that he would not be punished. These false promises, when considered in conjunction with the fact that Dassey was only 16-years old, had significant intellectual deficits, had no prior experience with law enforcement aside from this investigation, was alone with the investigators without the benefit of an

attorney or other allied adult, as well as other factors, rendered Dassey's confession involuntary under the Fifth and Fourteenth Amendments.

The court gave the state 90 days to decide whether it would retry Dassey. If it did not initiate proceedings to retry him, the court ordered Dassey released. The court's order also stated that, "[i]n the event the respondent files a timely notice of appeal, the judgment will be stayed pending disposition of that appeal." The purpose of such a stay was to avoid the obvious inefficiency of forcing the state to retry Dassey while concurrently appealing this court's decision. *Cf. Harris v. Thompson*, 2013 U.S. App. LEXIS 16715, 8-9 (7th Cir. Feb. 20, 2013) ("[W]e do not think it prudent to require the State to begin a retrial before the Supreme Court's resolution of the certiorari petition."). A stay also prevented the complications and confusion that could result if Dassey were to be acquitted in a retrial before the court of appeals reached a decision. *See Newman v. Harrington*, 917 F. Supp. 2d 765, 791 (N.D. Ill. 2013).

The respondent appealed (ECF No. 25), triggering the stay.

On September 14, 2015, Dassey filed a motion for release while the respondent appeals this court's decision. (ECF No. 29.) Dassey contends that release is appropriate because it is unlikely that the court of appeals will reverse this court's decision, he does not pose a risk of danger to the community, and he is not a flight risk. (ECF No. 29-1.) He proposes a detailed release plan prepared with the assistance of a clinical social worker. (ECF No. 29-5.)

The respondent opposes the motion, contending first that this court's stay divested it of jurisdiction to decide whether Dassey should be released pending the appeal. As to the merits of Dassey's motion, the respondent contends that the relevant factors favor denying Dassey's motion.

## II. Effect of the Court's Stay

Federal Rule of Appellate Procedure 23(c) states, "While a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety." "Rule 23(c) undoubtedly creates a presumption of release from custody …." *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987); *see also O'Brien v. O'Laughlin*, 557 U.S. 1301, 1301 (2009) (Breyer, J., in chambers). Rule 23 is an exception to the general rule that the filing of a notice of appeal generally "divests the district court of its control over those aspects of the case involved in the appeal," *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997).

With regard to the respondent's argument that this court's stay divested it of jurisdiction to decide whether Dassey should be released pending the appeal, the stay addressed only the order that Dassey be released under 18 U.S.C. § 2254 or retried within 90 days. That stay does not govern whether Dassey should be released pursuant

to Rule 23 while the respondent's appeal is pending. *See, e.g., Hampton v. Leibach*, 2001 U.S. Dist. LEXIS 20983, 4 (N.D. Ill. Dec. 18, 2001) ("The Court agrees that it is appropriate to permit the state to defer its decision whether to retry Hampton until the conclusion of the appeal -- thus resolving respondent's primary claim of irreparable injury -- but that does not govern whether Hampton should be released pursuant to Rule 23(c) while respondent's appeal is pending.").

In *Walberg v. Israel*, 776 F.2d 134 (7th Cir. 1985), the court of appeals granted the petitioner's writ of habeas corpus and ordered the state to release him unless it retried him within 120 days. *Id.* at 135. However, the court stayed its mandate to allow the respondent to petition the Supreme Court for certiorari. *Id.* The state did so. When the petitioner subsequently sought release pursuant to Rule 23, a dispute arose as to whether it was for the court of appeals or for the Supreme Court to decide whether the petitioner should be released in the interim. *Id.* Despite its stay, the court of appeals concluded that the issue was for it to decide. *Id.*

This court likewise concludes that, notwithstanding its stay of its judgment pending the respondent's appeal, it remains this court's obligation to address in the first instance whether Dassey should be released while the court of appeals considers the respondent's appeal.

### III. Legal Standard

In evaluating whether the respondent can overcome the presumption that Dassey is to be released pending the appeal, the court evaluates those factors generally relevant to the issuance of a stay: (1) likelihood of success on the merits; (2) the risk of irreparable injury; (3) the potential for injury to interested parties; and (4) the public interest. *Harris v. Thompson*, 2013 U.S. App. LEXIS 16715, 3 (7th Cir. Feb. 20, 2013); *Hilton*, 481 U.S. at 776. The Court in *Hilton* summarized how to weigh whether the factors rebut Rule 23's presumption of release as follows: "Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Hilton*, 481 U.S. at 778. Among the matters that a court should consider are whether there is a risk that the petitioner might flee and whether the petitioner would pose a danger to the community if released. *Id.* at 777.

The respondent's arguments against release rely generally upon conclusory assertions that the state, the public, and the victim's family all have an interest in ensuring that persons convicted of serious crimes are incarcerated. (ECF No. 31 at 12-13.) The respondent does not specifically address the sufficiency of the detailed release plan proffered by Dassey, suggest that the court should require surety, or otherwise

propose any conditions that the court should impose if it concludes that release is appropriate.

### IV. Likelihood of Success on the Merits

Regarding the likelihood of success on the merits, one court has noted a measure of "'dissonance' associated with a district court's consideration of 'the likelihood of being reversed.'" *Newman v. Harrington*, 917 F. Supp. 2d 765, 788 (N.D. Ill. 2013). "[A]ny attempt to predict the likelihood of reversal of its own decision places the Court in the awkward position of second guessing its own work." *Id.* at 791. A court does not issue a decision unless it firmly believes it to be correct and consistent with all applicable law and precedent. *Id.* at 788.

But every judge must be conscious of the fact that his or her judgment is not beyond the possibility of reversal. As famously expressed by Justice Jackson:

> Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final.

*Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring).

In habeas cases especially, there is always a not insignificant likelihood that the respondent will prevail on appeal. *See Etherly v. Schwartz*, 590 F.3d 531, 532 (7th Cir. 2009). The court of appeals reviews this court's decision anew, without deference to the

fact that the district court granted the petition. Nevertheless, even with the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), the presumption in favor of release in Rule 23(c) remains. Thus, more is required to rebut the Rule 23(c) presumption of release than noting the fact that AEDPA imposes a significant burden for a petitioner.

There are two ways a state inmate might obtain federal habeas corpus relief. First, the petitioner could prove that the decision of the last state court to review his conviction was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Alternatively, the petitioner could prove that the state court's decision was based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Ordinarily, a petitioner presents a claim under only one of these grounds. Dassey presented his claim under both grounds, and even more extraordinarily the court granted him relief on both grounds.

The court concluded that the state courts unreasonably found, as a factual matter, that the investigators never made Dassey any promises of leniency. *See* 28 U.S.C. § 2254(d)(2). The record is clear that, throughout the interrogation, the investigators repeatedly and in various ways assured Dassey that they already knew all of the details about Dassey's involvement in the events of October 31, 2005, and that he had nothing to worry about. Throughout the interrogation, the investigators repeatedly assured Dassey he would not be punished for telling them the incriminating details that they

professed to already know. The Wisconsin Court of Appeals' finding that there were no promises of leniency was against the clear and convincing weight of the evidence. Thus, this court reviewed de novo the question of whether Dassey's confession was voluntary and concluded that it was not.

Independent of the court of appeals' unreasonable factual finding that the investigators did not make Dassey any promises of leniency, this court also found that the court of appeals' decision that Dassey's statement was voluntary was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). The court of appeals' decision reflected a consideration of certain facts in isolation rather than under the totality of the circumstances, as the Supreme Court has made clear is required. Moreover, the court of appeals failed to consider the highly significant fact that, not only was an allied adult not present with Dassey during the interrogation, but the investigators deliberately exploited the absence of such an adult. Given the false assurances of leniency that the investigators made repeatedly throughout the interrogation, when considered alongside Dassey's young age, significant intellectual deficits, lack of any unrelated experience with law enforcement, as well as other factors, Dassey's confession was clearly involuntary. The court of appeals' decision to the contrary was unreasonable.

Thus, having been granted relief under both 28 U.S.C. § 2254(d)(1) and (d)(2), Dassey is arguably in a stronger position than the ordinary habeas petitioner. To

ultimately prevail, Dassey need only persuade the court of appeals that one basis for the court's decision was correct.

V.      **Remaining Factors**

The remaining factors the court considers in deciding whether the respondent has overcome the presumption that Dassey should be released pending the appeal are the risk of irreparable injury to the state, the potential for injury to interested parties, and the public interest. The court acknowledges that the state and the public have an obvious interest in incarcerating persons convicted of violent crimes. However, if the fact of the petitioner's prior conviction was all that was necessary to overcome the presumption that a successful habeas petitioner ought to be released pending appeal, Rule 23(c)'s presumption of release would be meaningless. *Hampton v. Leibach*, 2001 U.S. Dist. LEXIS 20983, 5 (N.D. Ill. Dec. 18, 2001). The fact that Dassey was convicted of brutal offenses and has a lengthy term of imprisonment yet to serve does "not distinguish this case from many, if not most, habeas situations." *Healy v. Spencer*, 406 Fed. Supp. 2d 129, 130 (D. Mass. 2005). And yet Rule 23(c) presumes that successful habeas petitioners will be released.

Dassey has no criminal record other than this case. His prison disciplinary record is exceedingly benign. (*See* ECF Nos. 29-3, 29-4.) On one occasion he was given several packets of ramen noodles from another inmate without permission from prison authorities. (ECF No. 29-3 at 2-5.) On one other occasion he was found to have violated

prison regulations by having items with tape on them and having used prison forms to keep score in games. (ECF No. 29-3 at 6.) There is no hint of violent or antisocial behavior from his time in prison. In fact, in an offender performance evaluation Dassey received a near perfect score. (ECF No. 29-4.) He was characterized as always working in a cooperative manner with staff and other offenders, following directions, completing assignments, and performing with minimal supervision. In short, the respondent has failed to demonstrate that Dassey represents a present danger to the community. *See Newman v. Harrington*, 917 F. Supp. 2d 765, 790 (N.D. Ill. 2013) ("Petitioner had no record of a violent criminal history prior to his arrest in the case at issue, and Respondent has made no attempt to show that Newman poses a *current* risk, twelve years after the events at issue (for example, there is no indication that he has committed any acts of violence while incarcerated)." (emphasis in original).)

Dassey remains in custody pursuant to what this court found to be a conviction obtained by way of unconstitutionally obtained evidence. He has already been incarcerated for over a decade, nearly 40 percent of his entire life. *Cf. Hampton v. Leibach*, 2001 U.S. Dist. LEXIS 20983, 5-6 (N.D. Ill. Dec. 18, 2001) ("The fact that Hampton has already spent twenty years in prison does not mean that the Court can disregard the harm he will suffer from further imprisonment."). "[E]very day Petitioner spends in prison compounds the 'substantial harm' that he has suffered on account of imprisonment based upon an unconstitutional conviction." *Newman*, 917 F. Supp. 2d at

789; *see also Johnson v. Loftus*, 2008 U.S. Dist. LEXIS 27826, 7-8 (N.D. Ill. Apr. 1, 2008) ("Petitioner has already served nine and a half years on a conviction that we have found to be constitutionally invalid, and he suffers additional harm every day his release or new trial is delayed."). "The injury that Petitioner will suffer by continued detention is undeniably irreparable." *Newman*, 917 F. Supp. 2d at 789.

"Any harm to the State pales in comparison." *Harris v. Thompson*, 2013 U.S. App. LEXIS 16715, 5 (7th Cir. Feb. 20, 2013). In the event the court of appeals disagrees with this court's decision, Dassey will return to prison. The respondent does not argue that releasing Dassey now would result in Dassey avoiding serving his entire sentence should he be ordered to return to prison. Thus, the state's interest in ensuring that persons convicted of crimes serve their full sentences is not undermined even if Dassey's release should prove temporary. Moreover, the public interest ultimately lies in favor of ensuring that persons are not detained in violation of the constitution. *Newman*, 917 F. Supp. 2d at 790.

The respondent does not argue that Dassey poses, in any way, a risk of non-appearance. Nor does the respondent request that Dassey post any bond, or that any surety guarantee his appearance, or that Dassey be subject to electronic monitoring. Indeed, the respondent does not request any conditions or express any view as to the conditions proposed by Dassey.

Dassey's family is concentrated in northeastern Wisconsin. There is no indication that he has the inclination (much less the means) to flee or will otherwise fail to appear as may be legally required. Moreover, Dassey has a strong interest not to flee. "[I]f he were to flee and become a fugitive while an appeal is pending, controlling law would result in this court's judgment being vacated, and his … conviction[s] and sentence being reinstated despite his claims of innocence." *Watkins v. Miller*, 2000 U.S. Dist. LEXIS 7131 (S.D. Ind. May 16, 2000) (citing *Dently v. Lane*, 720 F.2d 472 (7th Cir. 1983)). To the extent that a risk of non-appearance is inherent whenever a person faces a lengthy period of incarceration, these risks can be appropriately mitigated through routine conditions of release. *See Newman*, 917 F. Supp. 2d at 790. Dassey has offered a detailed release plan that was prepared with the assistance of a clinical social worker with experience in similar cases. That social worker would remain involved in assisting Dassey as he adjusts to freedom following his decade in prison.

Another way the respondent may rebut the presumption in favor of release contained in Rule 23(c) is to show "that the state is quite likely to be able to retry, reconvict, and reimprison the applicant." *Walberg*, 776 F.2d at 136. The respondent has made no effort to rebut the presumption of release in this manner. As this court noted in its decision granting the petition, "Dassey's confession was, as a practical matter, the entirety of the case against him on each of the three counts." (ECF No. 23 at 89); *Dassey*, 2016 WL 4257386, 35, 2016 U.S. Dist. LEXIS 106971, 110. Presumably, if the state had

other admissible, compelling evidence of Dassey's guilt, it would have presented it at trial or in opposition to Dassey's motion for release. In the absence of any argument from the respondent on this point, the court must conclude that, without Dassey's March 1, 2006 confession, retrial, reconviction, and re-incarceration are unlikely. *See Woods v. Clusen*, 637 F. Supp. 1195, 1197 (E.D. Wis. 1986) (noting that the fact that "the case against [the petitioner] has been declared to be without foundation without his unconstitutionally obtained confession" supported release under Rule 23).

Finally, the respondent asserts "that irreparable harm occurs to … the victim's family whenever a person convicted by a state court of the gravest of criminal offenses is released before completing his sentence." (ECF No. 31 at 12.) The respondent does not further develop this assertion. Nonetheless, the court was, and is, ever mindful of how its decisions inevitably impact Teresa Halbach's family and friends. This court, like every court, wishes it could decide cases in a manner that minimized harm to these innocents. However, a court's obligation to decide cases in accordance with controlling law often prevents that.

The court granted Dassey's petition and ordered that he be released or retried. There is a presumption that successful habeas petitioners are released while the respondent appeals that decision. The respondent has failed to rebut that presumption. The court does not find that the respondent has a strong likelihood of success on appeal. Moreover, the respondent has failed to show that the second and fourth factors

under the traditional stay analysis militate against release such that a mere "substantial case on the merits" would favor denying the petitioner release pending appeal. *See Hilton*, 481 U.S. at 778. Therefore, the court finds it must grant Dassey's petition and order him released from the custody of the respondent.

VI. **Conditions**

However, because proceedings regarding Dassey have not yet concluded and Dassey may be required to serve the remainder of his sentence or otherwise appear for legal proceedings, the court will impose conditions upon Dassey consistent with those routinely imposed in analogous circumstances. Although the respondent does not request that the court order Dassey be subject to any formal supervision, the court will order that Dassey be supervised by the United States Probation Office for the Eastern District of Wisconsin. United States Probation Officers are authorized to undertake such supervision pursuant to 18 U.S.C. § 3603(10), and courts routinely order such supervision when persons are released under Fed. R. App. P. 23. *See, e.g.*, *Harris v. Thompson*, 2013 U.S. App. LEXIS 16715, 9-10 (7th Cir. Feb. 20, 2013); *Newman v. Metrish*, 300 Fed. Appx. 342, 344 (6th Cir. 2008); *Waiters v. Lee*, 168 F. Supp. 3d 447, 455 (E.D.N.Y. 2016); *Decker v. Persson*, 2015 U.S. Dist. LEXIS 153585, 17-18 (D. Or. Nov. 13, 2015); *Newman v. Harrington*, 917 F. Supp. 2d 765, 792 (N.D. Ill. 2013).

Not only will the United States Probation Office monitor Dassey's compliance with the conditions of release the court will impose, but Probation Officers are experts

in addressing the issues that Dassey is likely to face upon being released after more than a decade in prison. Although Dassey has identified a social worker who will help his transition, United States Probation Officers are familiar with the community into which Dassey will be released and will be able to coordinate with the social worker to provide further support.

Dassey's release pending appeal is subject to the following conditions. Violation of any condition may result in the court ordering Dassey returned to custody pending the outcome of the appeal.

Dassey shall not violate any federal, state, or local law.

Dassey must appear in court as required and surrender to serve any sentence, as ordered by a court.

Dassey shall comply with any applicable law regarding sex offender registration.

Dassey shall be supervised by the United States Probation Office. He shall report as it directs.

Dassey shall cooperate with the United States Probation Office including being available for any home visit it deems necessary.

Within 48 hours of Dassey having contact with any police or law enforcement officer, Dassey shall report such contact to the United States Probation Office.

Not later than **12:00 PM, Tuesday, November 15, 2016**, Dassey shall provide to the United States Probation Office the address of his intended residence.

The United States Probation Office shall then inspect Dassey's intended residence and determine whether it is a suitable residence.

The United States Probation Office is authorized to conduct any further investigation it deems necessary to assess whether the court should impose different or additional conditions upon Dassey.

At any time the United States Probation Office may propose that the court impose additional conditions or modify conditions of Dassey's release.

Dassey shall obtain prior approval from the United States Probation Office before changing residences.

Dassey shall provide to the United States Probation Office a phone number where he may be reached and shall immediately inform the United States Probation Office of any changes.

Dassey's travel is restricted to the Eastern District of Wisconsin, *see* 28 U.S.C. § 130(a); *see also* http://www.wied.uscourts.gov/counties-served-division, and, to the extent necessary to consult with legal counsel, the Northern District of Illinois, *see* 28 U.S.C. § 93(a); *see also* http://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/GeneralInfo/Districtmap.aspx. Any other travel must be approved in advance by the court.

Dassey shall not obtain a passport.

Dassey shall not possess a firearm, destructive device, or other dangerous weapon.

Dassey shall not use or possess any controlled substance unless prescribed by a licensed medical practitioner. Dassey shall submit to any drug testing deemed appropriate by the United States Probation Office.

Dassey shall have no contact with co-defendant Steven Avery.

Dassey shall have no contact with the family of Teresa Halbach.

**IT IS THEREFORE ORDERED** that Dassey's motion for release pursuant to Fed. R. App. P. 23(c) (ECF No. 29) is **GRANTED**. The respondent shall release the respondent upon the United States Probation Office notifying the court that it has approved the proposed residence and completed whatever additional investigation it deems necessary. The court will then issue a further order directing the respondent to release the petitioner.

Dated at Milwaukee, Wisconsin this 14th day of November, 2016.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge